# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**January 10, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

**WACHOVIA BANK OF NORTH
CAROLINA, N.A., ET AL,**

Plaintiffs-Appellees,

Vs.

Davidson Chancery No. 97-450-II
C.A. No. M1999-00166-COA-R3-CV

**RUTH E. JOHNSON,**
Commissioner of Revenue,
State of Tennessee,

Defendant-Appellant.

FROM THE DAVIDSON COUNTY CHANCERY COURT
THE HONORABLE CAROL L. MCCOY, CHANCELLOR

G. Michael Yopp; Kathryn A. Stephenson
Tuke Yopp & Sweeney of Nashville
For Appellees

Paul G. Summers, Attorney General and Reporter
Charles L. Lewis, Deputy Attorney General
Joe C. Peel, Senior Counsel
For Appellant

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This is an excise tax case. Plaintiffs, Wachovia Bank of North Carolina, N.A., and numerous affiliated financial institutions (hereinafter Wachovia) filed this suit against the defendant, Ruth Johnson, Commissioner of Revenue of the State of Tennessee, seeking a refund of part of the excise taxes paid for the years 1992 and 1993, fiscal years, pursuant to T.C.A. § 67-1-1802 (c)(1) and T.C.A. § 67-4-817 (c)(1)(C).

The complaint, filed on February 6, 1997, alleges that each of the plaintiffs is a financial institution as defined in T.C.A. § 67-4-804 (a)(7), and that they collectively constitute a "unitary group" as defined by T.C.A. § 67-4-804 (a)(16). Plaintiffs aver that pursuant to T.C.A. § 67-4-817 (d), such "financial institutions," which are part of a "unitary group," must file a combined excise tax return and pay tax on all their operations. The complaint avers that plaintiffs are required to pay an excise tax equal to six percent of "net earnings" for business done in Tennessee for the next preceding fiscal year. Plaintiffs aver that for the fiscal year ending December 31, 1992 and the fiscal year ending December 31, 1993, they paid excise taxes based upon their 1992 and 1993 initial returns. On February 15, 1996, plaintiffs submitted amended tax returns for 1992 and 1993 in which plaintiffs claim they are entitled to a refund for both years. Because the Commissioner did not act upon the claim for a refund within the period prescribed, plaintiffs' claims have been deemed denied pursuant to T.C.A. § 67-1-1802 (b)(2), and this suit was filed. The complaint further avers:

> 17. On information and belief, the Commissioner failed to allow Plaintiffs to deduct from Plaintiffs' net earnings the expenses incurred by Plaintiffs from transactions between themselves (the "intercompany expenses"). The Commissioner's action was improper.

> 18. Tennessee Code Annotated § 67-4-805 (a) (3) (as in effect for the 1992 and 1993 taxable years) excluded from net earnings "dividends, distributions and receipts from transactions between members of the unitary group."

> 19. Section 162 (a) of the I.R.C. provides that all ordinary and necessary business expenses paid or incurred during the taxable year shall be deducted from gross income. Tennessee Code Annotated § 67-4-805 (a) (3) (as in effect for the 1992 and 1993 taxable years) did not exclude from the calculation of net earnings the deduction for expenses incurred by members of the unitary group from transactions between such members.

Plaintiffs seek a refund of the alleged overpayment, together with prejudgment

interest, attorney fees and expenses.

Defendant's answer admits that Wachovia is a unitary group and is subject to the provisions of the excise tax law as such a group and admits the tax return filings alleged in the complaint. The defendant joins issue on the otherwise material allegations of the complaint and avers that the excise tax law requires that intercompany expenses be included in a computation of the excise tax base of the unitary group and that plaintiffs' attempt to exclude such intercompany expenses is not in compliance with the tax law. Defendant avers that the denial of the refund claim was proper.

Both plaintiffs and defendant filed motions for summary judgment, and the trial court, by memorandum and order filed March 16, 1999, entered judgment for plaintiffs ordering a refund of the overpayment of taxes, plus applicable interest and attorney fees. Defendant has appealed, and the issue presented for review, as stated in defendant's brief, is:

> Did the Commissioner of Revenue properly require 32 commonly-owned financial institutions filing as a unitary group in accordance with T.C.A. § 67-4-805(a)(3)(1994) Repl. Vol.) to base their corporate excise tax liability on their net earnings calculated as if they were a single entity, thereby rejecting their effort to subtract from their combined net earnings all of the income they derived from their transactions with each other?

Wachovia's motion for summary judgment was supported by the affidavit of Jonathan W. Allen, Senior Vice President of Wachovia Bank, N.A. The Commissioner's motion was supported by affidavit of Barbara Sampson, tax audit manager, department of revenue, and the two affidavits of two experts, Richard Pomp, a professor of law at the University of Connecticut, and Michael S. Schadewald, a director of the Deloitte & Touche Center for Multistate Taxation at the University of Wisconsin - Milwaukee. In response to the Commissioner's motion, Wachovia supplemented Allen's affidavit and also filed affidavits of Lee S. Kraft and Philip N. Duncan, both CPA's licensed in Tennessee. Wachovia also filed the depositions of Arnold Clapp, Anne Dougherty, Richard Pomp, and Michael Shadewald. For the most part, these supporting documents deal with the preparation of the involved tax return, the allegedly correct method for preparing the tax return, the definitions in accounting

3

practices, some of the key words in the involved statute, and the origin and development of excise tax law. The record is voluminous and contains a great deal of material that is really not relevant to the real issue involved. The Commissioner states in her brief:

> The issue in this case is simple – does T.C.A. § 67-4-805(a)(3) require unitary banking groups to pay excise tax on their true net earnings by treating their members as one entity and ignoring transfers between them, or does it enable a unitary group of banks to eliminate virtually their entire excise tax base by subtracting from their combined net earnings all of their income from transactions with each other, without an offsetting entry for related intragroup expenses.

We agree with the parties and the trial court that this case is to be determined by the proper construction of the Tennessee excise tax statutes, and in particular, the provisions of the 1994 version of T.C.A. § 67-4-805(a)(1) and (a)(3):

> **67-4-805. "Net earnings" defined.** - (a)(1) Except as provided in subdivision (a)(2) or (3), "net earnings" is defined as federal taxable income before the operating loss deduction and special deductions provided for in 26 U.S.C. § § 241-247 and 249-250, and subject to the adjustments in subsection (b).
>
> *       *       *
>
> (3) For a unitary business, as defined in § 67-4-804(a)(13), "net earnings" is defined as the combined net earnings as defined in subdivision (a)(1) for all members of the unitary group with dividends, distributions and receipts from transactions between members of the unitary group excluded, and subject to the adjustments in subjection (b) on a combined basis.

The modern Tennessee corporate excise tax law was enacted in 1976 and its basic design called for separate reporting by each corporation doing business in the state. Subsequently, however, in 1990, the legislature amended the corporate excise tax law to require financial institutions to pay taxes on a combined basis. The tax imposed is six percent of the net earnings for the next preceding fiscal year for business done in the state. T.C.A. § 67-4-806(a).

The parties concede the Wachovia is a unitary business as defined in T.C.A. § 67-4-804(13), which states in pertinent part:

> (13) "Unitary business" means business activities or operations of financial institutions that are of mutual benefit, dependent upon, or contributory to one another,

4

individually or as a group, in transacting the business of a financial institution. The term may be applied within a single legal entity or between multiple entities. "Unitary group" includes those entities that are engaged in a unitary business wholly within or within and without this state;

The trial court determined that this case rested upon interpretation of the pertinent parts of the excise tax statutes. We agree with the trial court to that extent. Our role in construing statutes is to ascertain legislative intent and then to carry it out. ***Davenport v. Chrysler Credit Corp.***, 818 S.W.2d 23 (Tenn. Ct. App. 1991). We must be careful not to unduly restrict the statute's coverage or to expand it beyond its intended scope. ***Id.*** at 27.

The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used. If the statute is unambiguous, we need only to enforce the statute as written. ***Carson Creek Vacation Resorts, Inc. v. State***, 865 S.W.2d 1, 2 (Tenn. 1993). If the statute is ambiguous, we invoke the various rules of statutory construction. ***In Re: Conservatorship of Clayton***, 914 S.W.2d 84 (Tenn. Ct. App. 1995). A statute is ambiguous if it is capable of conveying more than one meaning. ***Evans v. Young***, 201 Tenn. 368, 381, 299 S.W.2d 218, 224 (1957). Courts confronted with statutory language that conveys more than one meaning may consider the legislative debate surrounding the statute's enactment. ***In Re: Conservatorship of Clayton,*** 914 S.W.2d at 90. In ascertaining the legislative intent, the Court may "consider the existing state of the law, the circumstances contemporaneous to the enactment of the new law, the facts which induced the new law, and the evil sought to be remedied." ***Still v. First Tennessee Bank, N.A.,*** 900 S.W.2d 282, 284 (Tenn. 1995). The statutory construction should reflect the meaning of the statute from the entire context thereof and from the statute's general purpose. ***See Bellsouth Telecommunications v. Greer***, 972 S.W.2d 663 (Tenn. Ct. App. 1997). The statute should be given the construction that will not render its terms useless. ***State v. Netto***, 486 S.W.2d 725 (Tenn. 1972).

In ***Still, supra,*** our Supreme Court said:

When the Court can gather the paramount intention of the legislative action, such intention will be given effect, although there may exist some apparent obstacles.

5

*Id.* at 284 (citing ***Rawlins v. Braswell***, 191 Tenn. 285, 231 S.W.2d 1021 (1950).

The Commissioner states that the purpose of the combined reporting provided for in the statute is to treat the members of the unitary business as a single economic enterprise or unit, and, thus, it is necessary to exclude transactions between the members of the group because these transactions have no economic effect on the earnings of the group as a whole. Wachovia takes issue with this perception by the Commissioner and states in its brief that there is no authority cited for such a position. We must respectfully disagree with Wachovia. Construing the statute as a whole, we have difficulty in interpreting the statute in a manner different from that asserted by the Commissioner. Before the 1990 amendment, the institutions filed separate returns, and the statutory language conveys that the purpose of the amendment was to eliminate such filings and treat the institutions that meet the definition of a unitary business as a single enterprise.

The tax base of the group is the combined net income of the individual members and an apportionment of the state's share of taxable income it made as to the unitary group. In ***Albertson's, Inc. v. Idaho Dept. of Revenue***, 683 P.2d 846 (Idaho 1984),the Idaho Supreme Court considered combined reporting of a taxable unit and stated:

> Combined reporting['s] . . . purpose is to permit application of the UDITPA formula to a single business enterprise which is conducted by means of separately incorporated entitles. **See *United States Steel Corp. v. Multistate Tax Commission,*** 434 U.S. 452, 473 n.25, 98 S. Ct. 799, 813 n.25, 54 L. Ed. 2d 682 (1978). **In an economic sense such a business is no different than a similar business composed of a single corporation with several separate divisions.** Compare ***Butler Bros. v. McColgan, supra*** [17 Cal.2d 664, 111 P.2d 334], with ***Edison California Stores, Inc. v. McColgan***, 30 Cal. 2d 472, 183 P.2d 16 (1947). **For tax reporting purposes such businesses should be treated the same. *Coca-cola Co. v. Department of Revenue***, 271 Or. 517, 533 P.2d 788 (1975); ***Keesling, A Current Look at the Combined Report and Uniform Allocation Practices***, 42 J. TAX. 106 (1975). ***ASARCO***,[***Inc. V. Idaho State Tax Commission***], ***supra,*** 99 Idaho at 934-35, 592 P.2d at 49-50 (1979). (emphasis added).

The trial court's decision to award Wachovia a refund for 1992 and 1993 taxes was premised on the court's construction of T.C.A. § 67-4-805(a)(3). The applicable

version of the statute provided that the net earnings of the unitary group is defined as a combined net earnings determined pursuant to § 67-4-805(a)(1) for all the members of the group "with dividends, distributions, and receipts from transactions between members of the unitary group excluded."

Wachovia asserts that the statute requires a three-step process of calculating the combined taxable net earnings of a unitary group. The first step is to determine the net earnings of each member of the unitary group. This is determined as any determination involving an individual entity - by computing the income less the expense to reach the net earnings. The second step, as asserted by Wachovia, is that the members of the group add the total of each of the items in their separate returns together. Wachovia notes in its brief that the Commissioner has no argument with the first two steps, as illustrated, but that the parties differ on what the third step should be. The Commissioner's instructions with the return state that "dividends, receipts, and expenses" are to be excluded from the return. The computations are made on Schedule J, which consist of: Line 1 - the combined federal net earnings. Line 2 provides for, "[a]dd expenses from transactions between members of the unitary group (schedule). Line 3 instructs to deduct dividends and receipts from transactions between members of the unitary group (schedule). Line 4 is the sum total of Lines 1, 2, and 3 and arrives at the net external income for a unitary group of financial institutions. The Commissioner asserts that the department's instructions state that "dividends, receipts, and expenses" are to be excluded from the return and that Schedule J, therefore, requires on Line 2 that the expenses from the intragroup transactions be added to the federal net earnings figure. Wachovia argues that T.C.A. § 67-4-805 (a)(3) actually provides that "dividends, distributions, and receipts from transactions between members of the unitary group" are to be excluded. Wachovia's original returns were prepared in accord with the instructions. Schedule J reflects the federal net earnings, plus expenses of the intracompany transactions minus the dividends and receipts of the intracompany transactions. The amended returns for which Wachovia seeks refunds eliminate the addition of the intercompany expenses. Herein lies the dispute between the parties.

The Commissioner asserts that the computation initially of the individual members of the group pursuant to the statute includes the income derived from intercompany transactions less the expense of intercompany transactions. Thus, in order to arrive at the correct tax of the unitary group, when the net earnings of the individual companies as previously calculated are added together to arrive at the combined net earnings, there must be provision made to eliminate from the calculation the intercompany income and expenses.

Wachovia argues that the statute does not provide for the exclusion of expenses and, therefore, the net earnings of the unitary business, as provided for in § 67-4-805(a)(3) requires only the deduction of intercompany income. The Commissioner argues, on the other hand, that this in effect allows Wachovia to deduct expenses twice; that is, by having the expenses deducted from the net earnings initially, which includes the income of the individual members of the group, and then allowing the intercompany income to again be deducted from Schedule J without the offset of adding the expenses back.

The Commissioner argues that to allow such a result under the excise tax statute is absurd. The Commissioner also asserts that "distribution" is used in many contexts and signifies "anything distributed." The trial court determined that a distribution is "a direct or indirect transfer of money or other property to or for the benefit of the shareholder in respect of its shares and a distribution may be in the form of a dividend, return of capital, or capital gains. T.C.A. § 48-11-201(8)." The trial court determined that a distribution is not an expense and that a receipt is a written acknowledgment of payments taken in or income received.

The Commissioner's brief points out various definitions and the use of the term "distributions," the net result being that it could be a synonym for "expend or pay." The Commissioner points out that when the term "distribution" is used to refer to disbursals, it means paying out, and, thus, could be considered synonymous with expense in the terms of the excise tax statute. The Commissioner also points out that Wachovia in its own accounting system describes internal shifting of costs as distribution of expenses.

8

We must determine the meaning of the term "distributions" as it relates to the statute as a whole in the context of the nature of the statute. The definition of "distribution" applied by the trial court seems to be inapplicable to intercompany transactions between related entities. This Court, like the Court in **Little Six Corp. v. Johnson**, 158 Tenn. 102, 11 S.W.2d 690 (1928), must disagree with the trial court's definition of "distribution" pursuant to the corporate law statutes. The purposes of the franchise and excise tax statutes are distinct from those pertaining to transfers of money or property to the benefit of shareholders of a corporation, and they should not be interpreted in *pari materia.*

The Commissioner in preparing the forms to be used under the unitary tax system, equated "distributions" with expenses, and, thus, distributions and receipts referred to in the statute encompass incoming and outgoing transfers from transactions between group members. Considering the purpose of the legislature, we conclude that the legislature intended the term "distribution" to mean essentially as asserted by the Commissioner.

Considering the excise statute as a whole, it is apparent to this Court that the intent and purpose of this particular legislation is to treat a "unitary group," as defined in the statute, as a single-tax entity and thus tax only the external earnings of the group. The statute clearly contemplates a reporting of combined net earnings of the members of the group and provides for the exclusion of dividends, distributions, and receipts from transactions between members of the group. It is also clear that net earnings, as defined in § 67-4-805 as federal taxable income, is basically income minus expenses. Thus, when the combined federal net earnings are determined, they constitute the net earnings of the group after deducting the expenses of intercompany transactions. By including in the calculation for net earnings the intercompany income and the intercompany expenses, there is a zero effect on the net earnings as they pertain to outside transactions. To allow a taxpayer to then deduct intercompany income again from the already established net earnings without a corresponding addition of the intercompany expenses would defeat the purpose of unitary tax consideration.

The parties have illustrated that the word "distributions" in the statute has various

9

definitions and uses. However, the word's use in the accounting field, in particular instances, can be considered synonymous with expenses. This Court must, if possible, interpret the statute and the words used therein in a manner that will carry out the legislative intent and in such a manner that the purpose of the legislation will not be defeated. The interpretation of the statute advanced by Wachovia and found by the trial court would not advance the legislative intent and could render the tax statute a virtual nullity. Courts must presume that the legislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws. *Fletcher v. State*, 951 S.W.2d 378 (Tenn. 1997); *Loftin v. Langsdon*, 813 S.W.2d 475 (Tenn. Ct. App. 1991).

Accordingly, we hold that Wachovia's amended Tennessee excise tax returns for the years 1992 and 1993 do not properly reflect net earnings of the unitary group, inasmuch as such earnings must exclude income and expenses of intercompany transactions.

The judgment of the trial court is reversed. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellee, Wachovia Bank of North Carolina, N.A.

_____
**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**