IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2000

## JABARI ISSA MANDELA v. DONAL CAMPBELL

**Appeal from the Chancery Court for Davidson County**
**No. 97-2112-II    Carol L. McCoy, Chancellor**

---

**No. M1998-00208-COA-R3-CV - Filed March 4, 2003**

---

This appeal involves a dispute between a prisoner and the Tennessee Department of Correction regarding the Department's mail policy. After the Department returned two packages addressed to him to their respective senders and denied his request for a declaratory order, the prisoner filed a petition in the Chancery Court for Davidson County seeking a declaratory judgment that the Department's policy should have been promulgated as a rule under Tennessee's Uniform Administrative Procedures Act and that returning the packages was inconsistent with the warden's statutory obligation to "receive" an incarcerated prisoner's property. The trial court upheld the policy and its application to the prisoner, and the prisoner has appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Jabari Issa Mandela, Henning, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Pamela S. Lorch, Assistant Attorney General, for the appellee, Donal Campbell.

### OPINION

### I.

Jabari Issa Mandela, then known as John Henry Wooden, was arrested in 1982 and charged with a series of similar rapes that had occurred in the Nashville area between 1980 and 1982. A Davidson County grand jury handed down an eighteen-count indictment against Mr. Mandela, and he was later tried on ten of these counts. He was eventually convicted of second degree burglary, aggravated assault, aggravated sexual battery, and aggravated rape involving three of his victims and received lengthy prison sentences. His convictions were later affirmed on appeal.[1] Mr. Mandela has

---

[1] *State v. Wooden*, 658 S.W.2d 553 (Tenn. Crim. App. 1983).

been somewhat of a litigation mill during his two decades behind bars[2]  This appeal is the latest in the growing list of Mr. Mandela's lawsuits.

The facts in this case are sketchy and must be gleaned from Mr. Mandela's papers.  Some time in the late 1990s, Mr. Mandela alleges that he sent his typewriter to its manufacturer for service.  After the manufacturer completed the repairs, it mailed the typewriter back to the prison where Mr. Mandela was incarcerated.  According to Mr. Mandela, the property room supervisor declined to accept the package containing the typewriter and ordered it to be returned to the manufacturer.  Mr. Mandela also alleges that around the same time, he purchased "religious objects"[3] that were likewise returned to their sender.

Following these incidents, Mr. Mandela filed a petition for a declaratory order with the Tennessee Department of Correction challenging the Department's mail policy.[4]  In June 1997, after the Department declined to issue a declaratory order, Mr. Mandela filed a pro se petition for a declaratory judgment in the Chancery Court for Davidson County.[5]  He attacked Tenn. Dep't Corr. Policy Index No. 507.02 on two grounds.  First, he asserted that the policy was invalid because it had not been promulgated as a rule under the Uniform Administrative Procedures Act.  Second, he asserted that Tenn. Code Ann. § 41-21-216 (1997) imposed on the warden a duty to "receive" property mailed to incarcerated prisoners.

The Commissioner of Correction moved to dismiss Mr. Mandela's claim on the ground that it failed to state a claim upon which relief could be granted.  After some tussling over whether Mr.

---

[2]*See Mandela v. Rose*, M1999-02552-COA-R3-CV, 2001 WL 856594 (Tenn. Ct. App. July 31, 2001) (No Tenn. R. App. P. 11 application filed); *Mandela v. State*, 01C01-9610-CR-00459, 1998 WL 511133 (Tenn. Crim. App. Aug. 20, 1998) *perm. app. denied* (Tenn. Mar. 22, 1999); *Mandela v. Hardison*, 01A01-9504-CC-00129, 1995 WL 258958 (Tenn. Ct. App. May 3, 1995) (No Tenn. R. App. P. 11 application filed); *Wooden v. State*, 898 S.W.2d 752 (Tenn. Crim. App. 1994); *Mandela v. Reynolds*, 01A01-9303-CH-00126, 1993 WL 236607 (Tenn. Ct. App. June 30, 1993) *perm. app. denied* (Tenn. Oct. 25, 1993); *Mandela v. McWherter*, 01A01-9203-CH-00103, 1992 WL 156102 (Tenn. Ct. App. July 8, 1992) *perm. app. denied* (Tenn. Oct. 26, 1992); *Mandela v. Reynolds*, No. 01A01-9004-CH-00139, 1990 WL 192731 (Tenn. Ct. App. Dec. 5, 1990) (No Tenn. R. App. P. 11 application filed); *Mandela v. Reynolds*, 01A01-9004-CH-00138, 1990 WL 135790 (Tenn. Ct. App. Sept. 21, 1990) (No Tenn. R. App. P. 11 application filed).

[3]The record does not disclose what these items were.

[4]Tenn. Dep't Corr. Policy Index No. 507.02 (1997) (superseded) is the Department's policy governing prisoner mail.  Because of the generality of Mr. Mandela's arguments, we need not discuss the policy's specifics other than to observe that the policy contains provisions authorizing wardens to reject mail addressed to a prisoner and to return the mail to its sender.

[5]Tenn. Code Ann. § 41-21-803 (1997) requires that a lawsuit for a cause of action accruing while a prisoner is incarcerated must be brought in the county where the facility housing the prisoner is located.  *Hawkins v. Tennessee Dep't of Corr.*, No. M2001-00473-COA-R3-CV, 2002 WL 1677718 (Tenn. Ct. App. July 25, 2002) (No Tenn. R. App. P. 11 application filed).  Thus, Mr. Mandela should have filed this case in Wayne County.  We have, however, determined that *Hawkins* applies prospectively to all cases filed after *Hawkins* was decided and all cases filed before *Hawkins* was decided in which the application of Tenn. Code Ann. § 41-21-803 was raised.  *Hawkins* does not apply here because this case was filed before our decision in *Hawkins* and because neither party raised the application of Tenn. Code Ann. § 41-21-803 either in the trial court or on appeal.

Mandela was entitled to proceed as a pauper, the trial court addressed the legal foundation of his claims. The court determined that the Department's mail policy did not affect private rights, privileges, or procedures concerning the general public and, therefore, that the Department was not required to promulgate the policy as a rule. Secondly, the trial court rejected Mr. Mandela's interpretation of Tenn. Code Ann. § 41-21-216 and found that the statute merely made it "lawful for the TDOC to receive the prisoner's goods; it is not mandatory." Mr. Mandela has appealed.

## II.
### THE STANDARD OF REVIEW

This appeal requires us to review an order granting a Tenn. R. Civ. P. 12.02(6) motion to dismiss. A motion to dismiss a complaint for failure to state a claim for which relief can be granted tests the legal sufficiency of the plaintiff's pleading. *Givens v. Mullikin*, 75 S.W.3d 383, 406 (Tenn. 2002); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). The motion requires the court to review the complaint alone, *Mitchell v. Campbell*, 88 S.W.3d 561, 564 (Tenn. Ct. App. 2002), and to look to the complaint's substance rather than its form. *Kaylor v. Bradley*, 912 S.W.2d 728, 731 (Tenn. Ct. App. 1995). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002) or when the complaint is totally lacking in clarity and specificity. *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Davis v. The Tennessean*, 83 S.W.3d 125, 127 (Tenn. Ct. App. 2001); *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001). Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997), and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts. ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 5-6(g), at 254 (1999).

On appeal from an order granting a Tenn. R. Civ. P. 12.02(6) motion, we must likewise presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); *Stein v. Davidson Hotel Co.*, 945 S.W.2d at 716.

## III.
### PROMULGATION OF THE DEPARTMENT'S MAIL POLICY AS A RULE

This case is not the first time that Mr. Mandela has attempted to use the rule-making requirements of Tennessee's Uniform Administrative Procedures Act to challenge the Department's policies. Approximately six months before he filed his petition in this case, this court found a similar challenge to the Department's Uniform Disciplinary Policies to be without merit. *Mandela v. Campbell*, No. 01A01-9607-CH-00332, 1996 WL 730289, at *2 (Tenn. Ct. App. Dec. 20, 1996),

*perm. app. granted* (Tenn. May 12, 1997). After Mr. Mandela perfected this appeal, the Tennessee Supreme Court put the issue to rest by affirming this court's decision regarding the Uniform Disciplinary Policies. *Mandela v. Campbell*, 978 S.W.2d 531, 534-35 (Tenn. 1998).

We have consistently followed the Tennessee Supreme Court's decision ever since. *Boles v. Tennessee Dep't of Corr.*, No. M2000-00893-COA-R3-CV, 2001 WL 840283, at *3-4 (Tenn. Ct. App. July 26, 2001) (No Tenn. R. App. P. 11 application filed) (holding that policies governing visits to prisoners by persons outside prison need not be promulgated as a rule); *Taylor v. Campbell*, No. M1998-00913-COA-R3-CV, 2001 WL 109387, at *3 n.8 (Tenn. Ct. App. Feb. 9, 2001) (No Tenn. R. App. P. 11 application filed) (holding that the Department's policy governing sentence reduction credits need not be promulgated as a rule). We see no reason to depart from the holdings of these cases with regard to the Department's policy regarding prisoner mail.

A quarter of a century ago, the United States Supreme Court observed that, "[w]hile the weight of professional opinion seems to be that inmate freedom to correspond with outsiders advances rather than retards the goal of rehabilitation, the legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate [mail]." *Procunier v. Martinez*, 416 U.S. 396, 412-13, 94 S. Ct. 1800, 1811 (1974). Tenn. Dep't Corr. Policy Index Nos. 504.01 (1995) (superseded) and 507.02 (1997) (superseded) addressed the handling of prisoner mail and personal property. While these Department policies may tangentially affect the general public at times – as when a package mailed to a prisoner is returned to its sender or when property of a prisoner is delivered by officials to designated persons not in prison – they do not purport to regulate or police any behavior or interests of the general public. Accordingly, the trial court properly held that the Department was not required to promulgate these policies using the rule-making procedures of the Uniform Administrative Procedures Act.

## IV.
### THE WARDEN'S DUTY TO "RECEIVE" PRISONERS' PROPERTY

Mr. Mandela also asserts that correctional officials have a statutory duty to "receive," rather than return, packages mailed to incarcerated prisoners. The statute he relies on provides, in part:

> It is lawful for the warden of the penitentiary, acting under and subject to the power of the commissioner of correction, to take charge of any property in the possession of any of the prisoners at the time of their entering the prison, and, on the application of the prisoner, to sue for and receive any goods, chattels, or money due or belonging to such prisoner, and to keep a correct account of such goods, chattels or money.

Tenn. Code Ann. § 41-21-216(a). Mr. Mandela says that this statute requires correctional officials to accept custody of any personal property mailed to a prisoner. He then equates any refusal to do so with outright confiscation of property by the state.

Our search for the meaning of statutory language must always begin with the statute itself. *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 3 (Tenn. 1986); *Winter v. Smith*, 914 S.W.2d 527, 538 (Tenn. Ct. App. 1995). This language draws its meaning from the context of the entire statute and from the statute's general purpose. *Wachovia Bank of North Carolina, N.A. v. Johnson*, 26 S.W.3d 621, 624 (Tenn. Ct. App. 2000); *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d 671, 673 (Tenn. Ct. App. 1997). The words and phrases used in a statute should be given their natural and ordinary meaning. *Berryhill v. Rhodes*, 21 S.W.3d 188, 195 (Tenn. 2000), *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000), unless the General Assembly used them in a specialized or technical sense. *Cordis Corp. v. Taylor*, 762 S.W.2d 138, 139-40 (Tenn. 1988). When the meaning of statutory language is clear, the courts should interpret and apply it as written. *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997); *United Steelworkers of Am. v. Tennessee Air Pollution Control Bd.*, 3 S.W.3d 468, 472 (Tenn. Ct. App. 1998).

Here, the first portion of Tenn. Code Ann. § 41-21-216(a) obviously envisions how correctional officials may deal with personal property belonging to men and women when they enter the Department's custody. Persons entering prison are not checking into a hotel or renting an apartment. They cannot just move their personal belongings into their new quarters. The first portion of the statute empowers the warden to take possession and hold for safekeeping the personal property and effects that prisoners may not possess behind the walls.

The second portion of the statute is of more interest to Mr. Mandela in this case. It speaks of a warden's lawful ability to "receive" any goods, chattels, or money due to a prisoner. Mr. Mandela wants this to mean that a warden has a duty to accept packages sent to a prisoner through the mail. Contrary to Mr. Mandela's position, however, that is not what the second portion of Tenn. Code Ann. § 41-21-216(a) envisions. The context and wording of the statute plainly demonstrates that its purpose is to empower the warden to act as a prisoner's personal representative to do for the prisoner what he or she can no longer personally do – take the necessary steps in the outside world to recover property due and owing to a prisoner. Special Project, *The Collateral Consequences of a Criminal Conviction*, 23 Vand. L. Rev. 929, 1023 n.665 (1970).

Properly understood, Tenn. Code Ann. § 41-21-216(a) empowers the warden to act as a receiver in the technical legal sense of the word, that is, as a disinterested person appointed under the law for the protection or collection of property belonging to an estate or fund. *Black's Law Dictionary* 1275 (7th ed. 1999). A receiver stands in the shoes of the person to whom the property is due for the purpose of pursuing and collecting it. It is in that technical sense that the statute provides that a prisoner may apply to have the warden "sue for and *receive* any goods, chattels, or money due or belonging to such prisoner."

Tenn. Code Ann. § 41-21-216(a) can avail Mr. Mandela little in this case for two reasons. First, it has nothing to do with the manner in which prison officials handle prisoner mail. Second, it imposes no duty upon the warden or any other prison official to receive a prisoner's property. It merely vests in the warden the authority to act on the prisoner's behalf if the warden, in his or her discretion, decides to do so. Accordingly, the trial court correctly concluded that the portion of Mr. Mandela's complaint relying on Tenn. Code Ann. § 41-21-216 fails to state a legal claim in this case for which relief can be granted.

**V.**

We affirm the dismissal of Mr. Mandela's petition and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Jabari Issa Mandela for which execution, if necessary, may issue. We also find that Mr. Mandela's petition and subsequent appeal are frivolous in accordance with Tenn. Code Ann. § 41-21-807(c) (Supp.2002) and Tenn. Code Ann. § 41-21-816(a)(1) (1997).

_____
WILLIAM C. KOCH, JR., JUDGE