IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 25, 2003 Session

**STATE OF TENNESSEE v. KATRINA A. CALLAHAN**

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S45,074     R. Jerry Beck, Judge**

_____

**No. E2002-00926-CCA-R3-CD**
**April 28, 2003**
_____

The defendant appeals her Sullivan County conviction, pursuant to a bench trial, of tampering with or fabricating evidence. On appeal, the defendant challenges only the sufficiency of the convicting evidence. Because we conclude that the evidence was insufficient to support the conviction, we reverse the conviction and dismiss the charge.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Reversed and Dismissed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Larry S. Weddington, Bristol, Tennessee, for the Appellant, Katrina A. Callahan.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and B. Todd Martin, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Following a bench trial conducted before the Sullivan County Criminal Court, Katrina A. Callahan was found guilty of Class E felony theft over $500, Tenn. Code Ann. § 39-14-103 (1997), and Class C tampering with or fabricating evidence, *id*. § 39-16-503 (1997). A separate charge of conspiracy to commit theft over $500 was dismissed. The trial court imposed an effective incarcerative sentence of eight years. On appeal, the only issue that the defendant presents for our review is whether the proof is sufficient to support her conviction for evidence tampering or fabrication.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This

means that we do not re-weigh the evidence but presume that the fact finder has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Although this case involved a bench trial, the findings of the trial judge who conducted the proceedings carry the same weight as a jury verdict. *State v. Tate*, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Viewing the evidence in a light most favorable to the state, we conclude that the evidence is insufficient to support the defendant's conviction. In the early morning hours of March 22, 2001, the defendant, who was working as a clerk at Appco Truck Stop in Kingsport, contrived a robbery. The defendant called the store manager, Patricia Dowell, at 5:12 a.m. and reported that she had been robbed. Ms. Dowell instructed the defendant to "hit the panic button" and call the police.

Kingsport Officer Matt Cousins responded to the call. The defendant told him that she had been robbed at gunpoint by two black males. Seven hundred forty dollars were missing from the cash register. The defendant provided a description of the men and related that the man who had the gun threatened her and hit her in the back of the head with the weapon. Based upon the defendant's description, the police detained one person and brought him to the robbery scene for a showup. The defendant did not identify that individual as one of the perpetrators.

The defendant's story began to unravel once the police reviewed the security tapes from two video cameras stationed inside the store. Before the tapes were reviewed, the defendant explained that one of the robbers had held a broom or a mop up to the lens of the more strategically located camera. When the tapes were played, they showed that the defendant first called the store manager and then something was placed over one of the camera's lens. Thereafter, the money was taken, and the last thing that the defendant did was summon the police.

When the defendant was confronted with the discrepancies between her account and what the tapes revealed, the defendant confessed that she had conspired with two men who had come into the store earlier to stage a robbery. In fact, the defendant's co-conspirators were sitting quietly in the trucker's lounge part of the store when Ms. Dowell and the police arrived. It was later determined that the object placed over the camera lens was a "beer flat," a cardboard container for beer cans.

At trial, the defendant exercised her right not to testify, and the case was submitted to the trial court at the conclusion of the state's proof. In closing argument, the defendant admitted that she supplied false information to law enforcement officials, which at the time was a Class A misdemeanor. *See* Tenn. Code Ann. § 39-16-502(a)(1)(A) (Supp. 2002) (amended in 2002 to increase offense classification to Class D felony). She contended, however, that her conduct did not

violate Code section 39-16-503, tampering with or fabricating evidence, the felony charge that had been leveled against her. The trial court disagreed and found the defendant guilty as charged.

> Tennessee Code Annotated section 39-16-503 specifies that it is unlawful
>
> for any person, knowing that an investigation or official proceeding is pending or in progress, to:
>
> (1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding; or
>
> (2) Make, present, or use any record, document or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding.

Tenn. Code Ann. § 39-16-503(a)(1), (2) (1997). The activity proscribed in this statute is commonly referred to as tampering with or fabricating evidence. That the defendant could have been charged with and convicted of making a false report[1] has no independent significance in terms of the sufficiency of the convicting evidence for the offense of tampering with or fabricating evidence. Tennessee's Criminal Code declares that "[w]hen the same conduct may be defined under two (2) or more specific statutes, the person may be prosecuted under either statute unless one (1) specific statute precludes prosecution under another." *Id.* § 39-11-109(b) (1997).

The state insists that the convicting evidence is sufficient in this case. Regarding the elements of the statute, the state first maintains that the defendant knew that an investigation was pending or in progress when she (or her cohorts) tampered with or fabricated evidence by covering up the camera lens. The true sequence of events that came to light was that the defendant called her manager to report a robbery, committed the theft, and then called the police. From these facts, the state claims that the defendant had initiated an investigation before actually committing theft from the store. The defendant counters that she was in the process of committing theft when the camera lens was covered, and because the crime had not been completed, no investigation was pending or in progress when she tampered with the camera lens.

The trial court's view of the matter is not entirely clear. At one point, the trial judge commented that the statutory language referred to an "investigation" but did not specify a "police investigation." Pursuant to this interpretation of the statute, a defendant's knowledge that any kind of investigation (public or private) was pending or in progress would be sufficient to establish this element of the offense. At another point, the trial court noted that obviously an investigation or

---

[1] *See* Tenn. Code Ann. § 39-16-502(a)(1)(A) (Supp. 2002) ("It is unlawful for any person to: (1) Initiate a report or statement to a law enforcement officer concerning an offense or incident within the officer's concern knowing that: (A) The offense or incident reported did not occur[.]").

official proceeding was pending because police officers arrived in their official capacity and began investigating the reported robbery.

The construction of a statute and its application to the facts of the case is an issue of law, and the appellate standard of review is *de novo* without any presumption of correctness given to the trial court's conclusions of law. *See State v. Walls*, 62 S.W.3d 119, 121 (Tenn. 2001). From our *de novo* review, we cannot agree that the defendant's call to her manager to report a robbery created a pending investigation as encompassed by Code section 39-16-503.

The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *See State v. Mallard*, 40 S.W.3d 473, 480 (Tenn. 2001). In determining the intent of the legislature, the court is to examine the natural and ordinary meaning of the language used without a forced or subtle construction that would limit or extend the meaning of the language. *See Penley v. Honda Motor Co.*, 31 S.W.3d 181 (Tenn. 2000). "The statutory construction should reflect the meaning of the statute from the entire context thereof and from the statute's general purpose." *Wachovia Bank of N. Carolina, N.A. v. Johnson*, 26 S.W.3d 621, 624 (Tenn. Ct. App. 2000).

Regarding the statute's context, it appears in Chapter 16, Part 5 of Title 39. Chapter 16 covers "Offenses Against Administration of Government," and Part 5 more particularly addresses "Interference with Government Operations." The pointed references to "government" administration and operations convinces us that non-governmental "investigations," such as undertaken or conducted by Appco Truck Stop, do not fall within the ambit of the defined offense. Any other judicial construction, we believe, would improperly expand the statute's coverage beyond its intended scope.

We agree with the trial court that obviously an investigation was pending or in progress when the police officers arrived in their official capacity and began investigating the reported robbery. That investigation, however, was not pending or underway at the time that the defendant and her cohorts covered up the camera lens. The statute, we believe, clearly requires the investigation to be pending or in progress at the time the defendant takes whatever action is claimed to constitute tampering with or fabricating evidence. Any other interpretation could lead to absurd results.

Next, we turn to the element that the defendant must "[m]ake, present, or use any record, document or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding." Tenn. Code Ann. § 39-16-503(a)(2) (1997).[2]

---

[2] Code section 39-16-503 specifies two modes of committing the offense. The first mode, subsection (a)(1), requires that a person "[a]lter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." Tenn. Code Ann. § 39-16-503(a)(1) (1997). The original presentment charged the defendant with this mode of evidence tampering/fabrication. On the morning of trial and with the defendant's consent, the state amended the charge to delete in its entirety this mode of offense commission

(continued...)

The state's argument on this element of the offense is twofold. First, the store cameras and the tapes are "things," according to the state, that create a "record" of events that transpire inside the store. Through her direct actions or by orchestrating the actions of others, the defendant made the record into, or manipulated the record into showing, something that falsely portrayed her as the victim of a robbery. Second, the state claims that the defendant then presented or used the tapes in an effort to corroborate her false story that she had been robbed. The defendant argues that obscuring her identity by covering the camera lens was part of the theft and occurred before any investigation was underway. She does not directly address the argument that she later directed the officers to the existence and location of the tapes.

The trial court struggled with this element of the offense, which is understandable in light of the dearth of case law on the subject. In particular, the trial court was concerned with whether the act of covering up the camera lens, thereby altering what the camera was able to record, created or resulted in a "falsity." Ultimately, the trial court concluded that by causing something to be left out of the video tape, the defendant falsified what actually happened.

At the outset, an important distinction, we believe, is that this case does not involve a "doctored" tape. The tape, for example, was not edited to insert the defendant's likeness and show her being robbed by two males.[3] Nor was the tape edited to remove footage of actual events that were captured. Indeed, the tape itself was never altered. The defendant made the same point to the trial court; she used as examples a bank robber who wears a mask to conceal his identity or one who uses a gun to shoot out the bank security cameras. Another example that occurs to us is a robber who extinguishes the lights and/or power in the building to thwart security cameras from recording the actual robbery. Such offenders are neither creating false evidence nor tampering with pre-existing evidence. We find these examples persuasive, and we hold that the statute does not reach the defendant's actions in obstructing the view of the security camera.

Last, we briefly address the argument that after the police arrived to investigate the reported robbery, the defendant "presented" the tape to the police and/or "used" the tape in the sense of relying on it to corroborate her story. Even assuming that the tape was so presented or used, the statute requires that the defendant know of the "falsity" of the "record, document or thing" so presented or used. Tenn. Code Ann. § 39-16-503(a)(2) (1997). As we explained above, we do not consider the tape in this case to be false; therefore, this theory does not demonstrate legally sufficient evidence to convict the defendant of the charged crime.

The defendant freely admits that she is guilty of reporting an offense or incident to a law enforcement officer knowing that the offense or incident did not occur. *See id.* § 39-16-

---

[2](...continued)
and substituted in lieu thereof the second mode, subsection (a)(2). For that reason, we confine our discussion to the second mode of evidence tampering/fabrication.

[3] In this regard, the trial court alluded once to the movie "Forest Gump" wherein Tom Hanks is shown shaking hands with Presidents Kennedy and Johnson.

502(a)(1)(A) (1997). At the time the defendant acted, the false reporting offense was classified as a Class A misdemeanor; later, the classification was raised to a Class D felony. By contrast, the evidence tampering/fabrication offense was and is denominated as a Class C felony. The state may well have considered the defendant's conduct to be far more serious than a Class A misdemeanor, but the solution was not to bring the felony charge as was done in this case.

For the foregoing reasons, the defendant's evidence tampering/fabrication conviction must be reversed. Because the reversal is grounded in the insufficiency of the convicting evidence, the charge must also be dismissed.

_____
JAMES CURWOOD WITT, JR., JUDGE