ANDERSON, C.J., DROWOTA and HOLDER, JJ., and REID, Senior Justice, concur.

Jabari Issa MANDELA, Appellant,

v.

Donal CAMPBELL, Commissioner, The Tennessee Department of Correction, Appellee.

Luther DAVIS, Appellant,

v.

Jim ROSE, Assistant Commissioner of the Tennessee Department of Correction; Kevin Myers, Warden; and Rusty Harville, Disciplinary Board Chairman, Appellees.

Supreme Court of Tennessee, at Nashville.

Oct. 19, 1998.

Frank J. Scanlon, Matthew A. Boyd, Nashville, for Appellants Mandela and Davis.

William B. Hubbard, Nashville, for Amicus Curiae, Corrections Corporation of America.

John Knox Walkup, Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael W. Catalano, Associate Solicitor General, Nashville, for Appellees Campbell, Rose, Myers and Harville.

Tom Anderson, Lexington, for Appellees Myers and Harville.

## OPINION

HOLDER, Justice.

We granted this consolidated appeal to address the following important issues: (1) whether the Department of Correction's disciplinary policy # 9502.01 improperly delegates responsibility of prison discipline to a private contractor; and (2) whether the Department of Correction's disciplinary policies are "rules" within the ambit of the Uniform Administrative Procedures Act. We have carefully reviewed the relevant statutes, law, and the parties' briefs. We hold that policy # 9502.01 is not an improper delegation and that the disciplinary policies before us are not "rules" within the ambit of the Uniform Administrative Procedures Act. Tenn.Code Ann. § 4–5–102(10). The appellants' claims are dismissed.

## BACKGROUND

These causes of action concern prison disciplinary proceedings in state prisons operated by private contractors. The Tennessee Department of Correction ("TDOC") is the state agency responsible for the administration of our state prison facilities. In the cases now before us, the TDOC contracted with a private corporation, Corrections Corporation of America ("CCA"), to operate the South Central. Correctional Facility ("South Central"). The TDOC has established Uniform Disciplinary Procedures which govern disciplinary matters in state prisons. These disciplinary procedures are enumerated in the TDOC's Administrative Policies and Procedures. Accordingly, disciplinary matters

at South Central are handled pursuant to the TDOC's policies and procedures.

The appellants, Luther Davis and Jabari Issa Mandela, are inmates at South Central. Both prisoners committed disciplinary violations and were disciplined pursuant to the TDOC's Uniform Disciplinary Procedures. The prisoners have made numerous challenges to the validity of their disciplinary actions. We granted a consolidated appeal to address: (1) whether the TDOC's Uniform Disciplinary Procedures unlawfully delegated disciplinary authority to the CCA; and (2) whether the TDOC's Uniform Disciplinary Procedures constitute "rules" under the Uniform Administrative Procedures Act ("UAPA").[1]

## DELEGATION

■ The TDOC's Uniform Disciplinary Procedures were implemented to provide a "fair and impartial tribunal [to hear] all disciplinary charges brought against inmates of the TDOC." Policy # 9502.01(IV)(A). The policy governs the manner in which disciplinary hearings shall be conducted, outlines an accused's rights, and establishes a disciplinary board. Disciplinary boards are comprised of six institutional employees, and "disciplinary hearing[s] shall be conducted before a panel of at least three (3) members" of the disciplinary board. Policy # 9502.01(VI)(A)(I).

The Uniform Disciplinary Procedures mandate appointment of a liaison between the TDOC and the private contractor. This liaison is referred to as a "Commissioner's Designee." The commissioner's designee is a TDOC employee who is "authorized by the commissioner to serve as the approving authority for specified actions occurring at privately contracted TDOC facilities." Policy # 9502.01(IV)(I). A commissioner's designee shall:

> observe all Class A and B disciplinary hearings, and approve or modify all recommendations of the disciplinary board at the time of the hearing. In cases of Class C infractions where punitive segregation is

1. The prisoners have raised additional issues which we have reviewed and found to be devoid of merit.

recommended, the commissioner's designee must approve/modify the recommendation as soon as possible and prior to the inmate's placement in segregation. If the commissioner [sic] designee is not present at a Class C hearing at which the board recommends any punishment other than a verbal warning, the chairperson shall forward all documentation to the commissioner [sic] designee for review prior to punishment.

Policy # 9502.01(VI)(D)(2). Accordingly, the disciplinary board conducts hearings, reviews the evidence, and makes recommendations to the TDOC liaison who must approve or modify the board's recommendation.

The issue with which we are now confronted is whether the TDOC's disciplinary policy violates the Private Prison Contracting Act of 1986. The Private Prison Contracting Act is codified at Tenn.Code Ann. §§ 41–24–101 to 115 and provides in pertinent part:

> No contract for correctional services shall authorize, allow or imply a delegation of the authority or responsibility of the commissioner to a prison contractor for any of the following: .... [g]ranting, denying or revoking sentence credits; placing an inmate under less restrictive custody or more restrictive custody; or taking any disciplinary actions.

Tenn.Code Ann. § 41–24–110(5). Accordingly, we must decide whether the TDOC's Uniform Disciplinary Procedures violate Tenn. Code Ann. § 41–24–110(5) by permitting private contractor employees to sit on disciplinary boards.

In the cases now before us, a disciplinary board was comprised of private contractor employees. These private contractor employees reviewed the evidence, entered findings, and made recommendations to a TDOC liaison. The final approval of the disciplinary recommendation rested solely with the TDOC commissioner's designee. The board's recommendation as to punishment was merely a recommendation, and actual discipline was not imposed until the TDOC representative reviewed the case and approved the board's recommendation. Accordingly, the TDOC retained the authority to punish the prisoners and, in fact, imposed the punishments in the cases now before us. Policy # 9502.01 does not violate Tenn.Code Ann. § 41–24–110(5). This issue is devoid of merit.

## "RULE"

■ The next issue with which we are now confronted is whether the TDOC's Uniform Disciplinary Procedures are "rules" as defined by the UAPA and subject to the UAPA's rulemaking requirements. The UAPA provides that rules within the ambit of the UAPA must be promulgated by public notice. The UAPA also requires a public hearing, approval by the attorney general, and filing with the state. Tenn.Code Ann. §§ 4–5–202, –203, –206, –211. Failure to promulgate a rule as contemplated by the UAPA renders the rule void. Tenn.Code Ann. § 4–5–216.

The appellants argue that the TDOC's *procedures* governing disciplinary proceedings must be within the ambit of the UAPA simply because Tenn.Code Ann. § 4–5–106(b) explicitly prohibits review of disciplinary decisions under the UAPA. The appellants' argument is fundamentally flawed. Section 4–5–106(b) merely exempts certain agency decisions from review under the UAPA. This statutory exemption, however, neither implies that prison disciplinary procedures are subject to the UAPA nor addresses scrutiny of those procedures.[2] We, therefore, are unpersuaded by the argument that the legislature intended the TDOC's disciplinary procedures to be subject to the UAPA simply because the legislature has prohibited review of disciplinary decisions under the UAPA.

The UAPA defines "rule" as an "agency statement of general applicability that implements or prescribes law or policy or describes the procedures or practice requirements of any agency." Tenn.Code Ann. § 4–5–102(10). The UAPA's definition of rule,

---

2. The omission of specific statutory language excluding prison disciplinary procedures may have been legally relevant if the legislature had drafted other statutory provisions under the UAPA specifically excluding procedures governing areas such as prisoner job termination or procedures governing parole hearings.

however, specifically excludes "[s]tatements concerning only the internal management of state government and not affecting private rights, privileges or procedures available to the public." Tenn.Code Ann. § 4–5–102(10)(A). Accordingly, a policy is not a rule under the UAPA if the policy concerns internal management of state government *and* if the policy does not affect the private rights, privileges, or procedures available to the public.

This Court's role in statutory interpretation is to ascertain and effectuate the legislature's intent. *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993). When a statute's language is unambiguous, the legislative intent shall be derived from the plain and ordinary meaning of the statutory language. *Carson Creek Vacation Resorts v. State,* 865 S.W.2d 1, 2 (Tenn.1993). If, however, a statute's language is ambiguous and the parties legitimately derive different interpretations, we must look to the entire statutory scheme to ascertain the legislative intent. *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995).

Whether the legislature intended the UAPA to be applicable to prison disciplinary policies and procedures may not be gleaned from the plain language of the UAPA. Members of our esteemed appellate court have disagreed, and both sides to this dispute advance compelling arguments. We, therefore, will focus on legislative intent in addressing this issue.

This Court may look to related statutes when attempting to ascertain legislative intent. Statutes relating to the same subject or having a common purpose shall be construed in pari materia. The construction of one such statute, if doubtful, may be aided by the language and purpose of another statute. *Lyons v. Rasar,* 872 S.W.2d 895, 897 (Tenn. 1994).

The legislature has provided the TDOC considerable deference and broad discretionary powers to enable the TDOC to manage its tremendous responsibilities. *See* Tenn. Code Ann. § 4–6–102 (stating, "The management and government of the state penitentiaries for adults are vested in the department of correction. It has all the power necessary

for the full and efficient exercise of the executive, administrative, and fiscal supervision over all such institutions, except as otherwise expressly provided."). This broad grant of legislative discretion necessarily includes the power to establish policies and procedures for handling disciplinary matters. This broad grant of discretion also envisions that those persons intimately involved with the intricacies of the prison system and not the voting public are best equipped to establish policies and procedures for inmate discipline.

The promulgation requirements of public notice, public hearing, attorney general approval, and filing with the state are simply not realistic requirements for implementing procedures that concern the intricacies and complexities of a prison environment. In *L'Heureux v. Dept. of Corr.,* 708 A.2d 549 (R.I.1998), the Rhode Island Supreme Court reviewed an administrative procedures act similar to the UAPA:

> We are persuaded by the rationale of the foregoing federal and state cases that the intricate structure of our APA provisions relating both to contested cases *and to the exercise of the rule-making power* would be ill suited to the management of the often volatile population of the [Adult Correctional Institution].... We are of the opinion that the reading of the language of the APA together with our interpretation of the intention of the General Assembly that this statute should be applied in the determination of private and public rights as opposed to the circumstances and conditions of a correctional institution lead inevitably to the conclusion that the APA is not applicable to classification proceedings, disciplinary proceedings, *or rule making dealing with the internal affairs of the ACI by the DOC.*

*Id.* at 553 (emphasis added).

The TDOC's Uniform Disciplinary Procedures are internal operating procedures detailing how disciplinary charges shall be levied and processed against inmates committing disciplinary infractions. The policies have been carefully tailored to outline an accused's rights and to provide a fair and impartial tribunal constructed of members intimately familiar with the prison set-

ting. We hold that the pertinent statutes when read in pari materia evidence a legislative intent to grant considerable deference to those best suited and most familiar with the prison setting when constructing inmate disciplinary policies and procedures. Accordingly, we hold that the legislature did not intend the UAPA to govern the TDOC's disciplinary policies and procedures.

### CONCLUSION

We have reviewed the appellants' remaining claims and hold those claims to be devoid of merit. We further hold: (1) that the TDOC's Uniform Disciplinary Procedures do not unlawfully delegate disciplinary authority to a private corporation; and (2) that the TDOC's Uniform Disciplinary Procedures are not "rules" within the ambit of the UAPA. The appellants' claims are dismissed. The costs of this appeal shall be taxed against the appellants for which execution may issue if necessary.

ANDERSON, C.J., DROWOTA and BIRCH, JJ., concur.

REID, Special Justice not participating