# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 2000 Session

## WOODROW WILSON v. SOUTH CENTRAL CORRECTIONAL FACILITY DISCIPLINARY BOARD

**Appeal from the Chancery Court for Wayne County**
**No. 10354      Jim T. Hamilton, Judge**

---

**No. M2000-00303-COA-RM-CV - Filed September 28, 2000**

---

An inmate in a privately operated prison filed a Petition for Writ of Certiorari against the disciplinary board at that facility. The trial court dismissed his petition for failure to state a claim. We affirm

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Woodrow Wilson, Clifton, Tennessee, Pro Se.

Tom Anderson, Jackson, Tennessee, for the appellee, South Central Correctional Facility Disciplinary Board.

## OPINION

### I. A Disciplinary Proceeding

On September 12, 1998, a random search of the cell of Woodrow Wilson, a prisoner at the South Central Correctional Facility (SCCF) in Clifton, Tennessee, resulted in the seizure of what was alleged to be marijuana. The following day, Mr. Wilson was charged with drug possession, an administrative infraction. A hearing by the disciplinary board conducted on September 18 resulted in a finding of guilt on the charge, and a penalty of five days of punitive segregation (suspended for 60 days), a $4.00 fine, a four month package restriction, and suspension of visitation for six months. Mr. Wilson filed an administrative appeal with Jim Rose, Assistant Commissioner of the Department of Correction, who affirmed the conviction on October 30, 1998.

On December 28, 1998, Mr. Wilson filed a "Petition for Writ of Certiorari to Review Agency Decision". The petition named the SCCF Disciplinary Board as respondent, and alleged numerous violations of Mr. Wilson's due process rights arising from the manner in which the board conducted its hearing. The attorney for the disciplinary board filed a Motion to Dismiss under Rule 12.02(6) Tenn. R. Civ. P., for failure to state a claim upon which relief can be granted.

A memorandum accompanying the motion suggested three possible reasons why Mr. Wilson was not entitled to the writ he sought: (1) because the trial court had no legal authority to review the decision of the disciplinary board; (2) because a plain, speedy and adequate remedy was available under federal law; and (3) because the sole correct party against whom a Petition for Writ of Certiorari must be filed is the Department of Correction. The trial court granted the respondent's motion on June 7, 1999, but did not state which of the defendant's grounds it found persuasive. This appeal followed.

## II.  The Power of the Courts under the Writ of Certiorari

The legislature has restricted the authority of the courts to review disciplinary proceedings against prisoners, by specifically excluding such proceedings from the contested case provisions of the Administrative Procedures Act. *See* Tenn. Code. Ann. § 4-5-106(b). However the courts retain a limited power of review under the writ of certiorari, and may compel an inferior tribunal exercising a judicial or quasi-judicial function to send its records up for review. Tenn. Code. Ann. § 27-8-101, et seq.

The scope of review under the writ is very narrow. The court does not review the intrinsic correctness of the inferior tribunal's decision, but examines the record to determine whether that tribunal has exceeded its jurisdiction, or has failed to proceed according to the essential requirements of the law. *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871 (Tenn. Ct. App. 1994). The writ is never granted as of right, but its grant or denial is within the sound discretion of the trial court. *Boyce v. Williams*, 389 S.W.2d 272 (Tenn. 1965).

Mr. Wilson claims that he is entitled to the writ because in deciding his case, the disciplinary board did not follow the rules promulgated by the Tennessee Department of Correction. He also claims that the procedure he was subjected to violated his constitutional due process rights. Finally, he argues that the rules were defectively written, because they allow a for-profit corporation to evade the legislative prohibition against prison contractors disciplining prisoners. We will examine each of these arguments in turn.

## III.  Disciplinary Rules for Privately-Operated Prisons

Since Mr. Wilson is an inmate in a prison operated by Corrections Corporation of America, he is subject to the Uniform Disciplinary Procedures for privately operated prisons, which are found in #9502.01 of the Administrative Policies and Procedures of the Department of Correction. These procedures are quite similar to those found in #502.01 which apply to prisons operated directly by

the department, except for the role played by the "commissioner's designee" in privately operated prisons.

The designee is an employee of the Tennessee Department of Correction (TDOC) who is authorized by the Commissioner of Correction to approve or disapprove "specified actions occurring at privately contracted TDOC facilities." The need for such an officer is explained by a legislative framework that permits the state to contract with private corporations to run some of its prisons, but prohibits such corporations from performing certain functions (such as disciplining prisoners) that should only be exercised by government. *See* Tenn. Code. Ann. § 41-24-110(5).

The Uniform Disciplinary Procedures require the warden (a CCA employee) to appoint a six-member disciplinary board made up of institutional employees, whose members hear all disciplinary offenses. Hearings are conducted before either a panel of three or a single hearing officer, depending on the severity of the alleged offense. The commissioner's designee is required to attend all hearings for Class A offenses, the most serious class of disciplinary offense under the rules. After the hearing, the board issues a disciplinary report, which sets out its finding of guilt or innocence, the evidence relied upon, and if the finding was guilt, a recommended punishment.

To avoid the restrictions of Tenn. Code. Ann. § 41-24-110(5), all the findings of the panel are considered to be recommendations only, which cannot be put into effect until the commissioner's designee signs off on them. Several prisoners disciplined in accordance with these procedures brought suits against the Department of Correction, asserting that it violated Tenn. Code. Ann. § 41-24-110(5) by permitting private employees of a prison contractor to sit on disciplinary boards.

The suits were consolidated in the Tennessee Supreme Court, which concluded that so long as the commissioner's designee retained the ultimate power to approve or modify the recommendations of the panel, the final authority over discipline still rested with TDOC, and its disciplinary policies did not constitute a violation of Tenn. Code Ann. § 41-24-110(5). *Mandela v. Campbell*, 978 S.W.2d 531, 533 (Tenn. 1998).

In a subsequent opinion, *Pigg v. Casteel*, No. 01-A-01-9807-CH-00384 (Tenn. Ct. App. Mar. 29, 1999)(No Tenn. R. App. P. 11 application filed), this court relied upon *Mandela v. Campbell* to support the obverse of its key holding: that if the commissioner's designee failed to approve a recommendation of the disciplinary board, then implementation of that recommendation constituted reversible error as a violation of Tenn. Code. Ann. § 41-24-110(5).

## IV. The Commissioner's Designee Has an Important Role to Play

Mr. Wilson alleges that the disciplinary board failed to follow the rules of the Department of Correction in several important respects. Putting aside for the moment the merits of Mr. Wilson's allegations as to the conduct of the disciplinary board, we note that the prisoner alleges that when he informed the commissioner's designee of these irregularities, the designee commented that he refused to intervene into CCA affairs, and would therefore uphold the conviction. If he indeed made

such a remark, it would show a surprising misunderstanding of the central role the commissioner's designee is supposed to play in disciplinary matters.

Aside from his duty to observe all Class A disciplinary hearings and to approve or modify all recommendations of the board upon completion of any disciplinary hearing, the commissioner's designee has been endowed with considerable authority under Rule #9502.01.

This includes the authority to affirm or reject the segregation of any inmate pending disciplinary action, #9502.01(VI)(D)(3)(b); to approve (or disapprove) of any sanctions imposed on an inmate who pleads guilty to a disciplinary offense, (VI)(D)(5)(f); to stay or suspend the implementation of any punishment for up to 60 days, (VI)(E)(4)(c); to stay any punishment pending the results of an appeal, (VI)(E)(4)(d); and together with the warden, to review and approve any confinement of an inmate in punitive segregation for more than 30 days, (VI)(E)(4)(a)(6). The designee's decision to dismiss a disciplinary charge is final, and is not subject to rehearing or reversal, (VI)(F).

When we read Rule #9502.01 of the Department of Correction, together with the prohibitions of Tenn.Code.Ann. § 41-24-110(5) and the Supreme Court's decision in *Mandela v. Campbell*, supra, it is apparent to us that the commissioner's designee is not appointed to rubber stamp disciplinary decisions made by the employees of the private prison contractor, but to take an active and decisive role in the disciplinary process. The designee's failure to do so may conceivably expose the state to liability for acts that originated with the employees of the private contractor.

## V. Due Process and Disciplinary Proceedings

The Policy section of #9502.01 supplies some guidance on the question of how closely prison officials must adhere to the procedural standards set out in the rules, and to what extent prisoners may rely upon the rules when challenging a disciplinary ruling:

> **POLICY**: Fair and impartial disciplinary proceedings will be administered against inmates charged with disciplinary infractions. The procedures contained herein alone shall govern the disciplinary process. This policy is not intended to create any additional due process guarantees for inmates beyond those which are constitutionally required. Minor deviations from the procedures set forth below shall not be grounds for dismissal of a disciplinary offense unless the inmate is able to show some prejudice as a result and the error would have affected the commissioner's designee's disposition of the case.

The United States Supreme Court has several times discussed the extent to which constitutional due process guarantees are applicable to prison disciplinary proceedings. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court observed that the unique requirements of prison life necessarily involve the retraction or withdrawal from inmates of many rights and privileges that are routinely afforded to ordinary citizens. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court held

that the possibility of a short period of confinement in punitive segregation was well within the conditions inherent in a valid sentence of imprisonment, and did not create a liberty interest that would entitle an inmate to due process protections.

Mr. Wilson's chief objections to the procedures he was subjected to are that a single hearing officer conducted the hearing rather than a panel of three, that Warden Kevin Meyers, Warden Danny Scott and Chief of Security Clarence Potts were all in attendance at the hearing, and that the Disciplinary Report Hearing Summary was inadequate.

We must note at the outset that the record indicates that the offense for which Mr. Wilson was disciplined was a Class B offense. While there is some ambiguity in the rules, it appears that they contemplate that Class B and Class C offenses are to be heard by a disciplinary hearing officer rather than a three member panel, except for Class B offenses "where accumulated sentence credits may potentially be removed." Rule #9502.01(VI)(A)(1)(a). There is no indication in the record that Mr. Wilson faced the possible loss of sentence credits, and the punishment imposed did not include any such loss.

The prisoner objected to the presence of the three senior correctional officials at the hearing because he felt that they could have an intimidating effect upon the hearing officer and witnesses. He notes that rule #9502.01 provides at VI(E)(3)(g), "When the testimony of a witness is to be heard, all other witnesses, except the accused inmate and advisor, shall be excluded from the room upon approval of the warden." However, there is nothing in the record to indicate that the wardens and the security officer were witnesses in this case, and we have found nothing in the rules to indicate that senior correctional officials may not observe disciplinary hearings if they wish.

The hearing officer is drawn from the disciplinary board, all of whose members are correctional employees appointed by the warden. Rule 9502.01(VI)(A)(1). Since the warden is their superior officer, and in a position to affect their conditions of employment, intimidation may be a possibility. But something more than the mere presence of the warden is required to establish an inference of intimidation.

Upon the conclusion of deliberations in a disciplinary case, the hearing officer must create a Disciplinary Report Hearing Summary, by setting out the pertinent information on a pre-printed form. (VI)(E)(3)(j). The information required on the form includes detailed reasons for the hearing officer's recommendation, and a summary of the evidence which led him to reach his conclusion. A copy of the form is given to the inmate.

Mr. Wilson contends that the form he received was inadequate because it contained too little evidence to support the decision made, and because it failed to explain why the hearing officer did not credit the testimony of Mr. Wilson's alibi witness. A copy of the form is in the record. Unfortunately, it is very difficult to read, apparently because it was itself made from a second or third generation copy of the original. Notwithstanding Mr. Wilson's objections, however, we can make

out enough of it to conclude that it contains the essential information required by the disciplinary rules.

Mr. Wilson also raised some evidentiary objections. Chief among them was that the substance that was seized from his cell was never tested to prove that it was indeed marijuana, and that the chain of custody that led to its admission into evidence (in the form of a photograph of the substance) was never established. We note, however, that the familiar rules of evidence do not apply to disciplinary proceedings, and that the #9502.01 provides that "[t]he board/hearing officer shall consider all evidence which it finds to be reliable, whether or not such evidence would be admissible in a court of law." (VI)(E)(3)(c).

After examining all of Mr. Wilson's objections to the proceedings against him, we do not find that any constitutional due process rights were violated, and we do not find any deviations from the rules so extreme as would compel the trial court to issue the writ of certiorari.

## VI. The Proper Respondent

The appellee does not address Mr. Wilson's allegations of contractor misconduct on appeal. Appellee's sole argument is that in naming the SCCF Disciplinary Board as respondent, the petitioner is seeking relief from the wrong party. The appellee contends that in accordance with the Supreme Court's holding in *Mandela v. Campbell*, supra, only the Department of Correction is charged with the duty of disciplining prisoners, and that the Department is the proper party in interest, not the disciplinary board or its members.

In his reply brief, Mr. Wilson observes that policy #9502.01 gives employees of the prison contractor wide latitude to determine how disciplinary hearings will be conducted. He notes that among other things, the composition of the board, the investigation of the offense, the time schedule for the hearing, and the preparation of the disciplinary report are all under the control of private prison employees. The appellant argues that the authority exercised by private employees offers many opportunities for abuse of their powers, and that such abuse would be beyond the reach of judicial review if we agreed that the writ could not be issued against them.

We agree that placing legal responsibility for discipline with the department while allowing a private contractor to perform the preliminary functions multiplies the potential for error or abuse. But the appellee is correct in asserting that insofar as *Mandela v. Campbell* places the ultimate responsibility for discipline with the State, it is the only party that can be made to answer for abuses in the disciplinary process. This is another reason why the on-site representative of the State (the commissioner's designee) should not take a passive role when reviewing the actions of the disciplinary board.

Mr. Wilson also notes that the legislature has specifically decided that private prison contractors should not be protected by sovereign immunity, *see* Tenn. Code. Ann. § 41-24-107(b), and he argues that by affirming the dismissal of the members of the disciplinary board, we would

be extending a form of de facto immunity to their acts, in contravention of the legislative intention. We do not agree. Limiting the Writ of Certiorari to governmental bodies does not alter the remedies available in tort or under the criminal laws against prison contractors and their employees. *See* Tenn. Code. Ann. § 41-24-108.

## VII.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Wayne County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.