# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 14, 2000

## PEGGY BOLES v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 99-3088-I     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2000-00893-COA-R3-CV - Filed July 26, 2001**

---

The wife of an incarcerated person brought an action seeking to have a policy of the Department of Correction declared invalid. The policy involved a visitor's responsibility to control children while visiting an inmate in a state prison. The trial court dismissed the petition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Peggy Boles, Pro Se.

Paul G. Summers, Attorney General, Michael Moore, Solicitor General, Pamela S. Lorch, Assistant Attorney General, for the appellee, Tennessee Department of Correction.

## OPINION

The appellant, Ms. Boles, whose husband is incarcerated, brought a petition for declaratory judgment pursuant to Tenn. Code Ann. § 4-5-225 challenging a policy of the Department of Correction regarding control of the behavior of children while visiting incarcerated persons in state prisons. Among other things, the subject policy provided that visitation may be terminated if visitors fail to control their children while visiting.

The trial court dismissed Ms. Boles's petition for failure to state a claim because (1) Ms. Boles lacks standing since she did not allege that her visitation rights were terminated for her failure to control her children, (2) Ms. Boles may not bring this action on behalf of others since she is not

a licensed attorney,[1] (3) there is no constitutional right to unfettered visitation with prisoners, and (4) the Department is not required to promulgate its policies regarding the operation of prisons under the Administrative Procedures Act. Ms. Boles appeals from the dismissal of her petition.

I.

Mrs. Boles asked the court to set aside Tennessee Department of Correction Policy #507.01, which provides:

> Visitors are responsible for controlling their children. Children are not allowed to run or play in the main visiting area or on the yard. Disciplining children is strictly up to the VISITOR and not the inmate.

Policy # 507.01(VI.)(F)(2) provides that visitation may be terminated for "Visitors who fail to control their children."

Ms. Boles visits her incarcerated husband regularly. In her opposition to the motion to dismiss, she explained that she routinely brought her grandson to visit his grandfather on weekly visits, but "these visits had to be severely curtailed" because of Policy #507.01. On appeal, she asserts that the policies are unrealistic in their expectations of the behavior of three-year old children. In particular, she alleges that the policy "directly affects the Appellant's privilege to visit with her husband by restricting the normal movements and actions of their 3-year-old grandson."[2] Ms. Boles does not allege that her visitation rights have been terminated or that any particular visit has been terminated.

Ms. Boles brought her action pursuant to Tenn. Code Ann § 4-5-225, which provides in pertinent part:

> (a) The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant. The agency shall be made a party to the suit.

---

[1] In the trial court, Ms. Boles asked that visitation of all persons whose visitation had been terminated for failure to control their children be reinstated. She did not specifically allege that any particular person's visitation had been terminated. She also generally objected to the policy on behalf of others subject to its restrictions. On appeal, Ms. Boles does not attempt to assert rights or seek relief on behalf of other persons.

[2] In the trial court, Ms. Boles argued that the requirement that the visitor be responsible for discipline of a visiting child interfered with the grandparents' right to share parenting responsibilities. She does not rely on that argument on appeal.

A prerequisite to such an action is the filing with the agency a request for a declaratory order, Tenn. Code Ann. § 4-5-225(b), and such requests may only be filed by "an affected person," Tenn. Code Ann. § 4-5-223(a). Thus, under the Administrative Procedures Act, a court may issue a declaratory judgment if an "affected person" seeks that relief and if the rule or order, or its application, interferes with, impairs, or threatens to interfere with the person's rights. *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 456 (Tenn. 1995).

Standing is a prerequisite to an action for declaratory judgment, including a petition filed pursuant to the Administrative Procedures Act. *Tennessee Med. Ass'n v. Corker*, No. 01A01-9410-CH00494, 1995 WL 228681 at *1 (Tenn. Ct. App. April 19, 1995) (no Tenn. R. App. P. 11 application filed). "Standing is a limitation upon judicial power. The standing requirement imposes a duty to allege a 'particularized injury concretely and demonstrably flowing from the action of the defendants which will be redressed by the remedy sought.'" *Id.* (citations omitted). In addition,

> a declaratory judgment action cannot be used by a court to decide a theoretical question, render an advisory opinion which may help a party in another transaction, or "allay fears as to what may occur in the future." Thus, in order to maintain an action for a declaratory judgment a justiciable controversy must exist. For a controversy to be justiciable, a real question rather than a theoretical one must be presented and a legally protectable interest must be at stake.

*State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000) (citations omitted).

Finally, a court's authority to set aside an administrative rule or order is limited by the following provision of Tenn. Code Ann. § 4-5-225(c):

> In passing on the legal validity of a rule or order, the court shall declare the rule or order invalid only if it finds that it violates constitutional provisions, exceeds the statutory authority of the agency, was adopted without compliance with the rulemaking procedures provided for in this chapter or otherwise violates state or federal law.

The trial court determined that Ms. Boles lacked standing to bring this action because she did not allege that her rights or privileges had been interfered with or impaired by the policy. We agree, because Ms. Boles has not alleged that her visitation rights have been terminated. As we interpret Ms. Boles's claims on appeal, she asserts that her visitation is affected or curtailed because she must control the behavior of her three-year old grandson when she brings him to visit his grandfather or face the possibility that her visitation will be terminated or suspended. We conclude that such a allegation does not allege impairment of a legally protectable interest. We further conclude that the

court properly dismissed her petition to have the policy set aside, or invalidated, because her claims do not amount to an allegation of a violation of a constitutional provision, or a state or federal law.[3]

Prison officials are responsible for the safety and security of inmates, employees and visitors of their institutions. They have a great deal of discretion in establishing policies and rules which further the penological purposes of safety and security. It is well established that visitation of prisoners is subject to regulation. *Spear v. Sowders*, 71 F.3d 626, 630 (6th Cir. 1995). Persons who seek to enter a prison in order to visit an inmate do not have unfettered rights to such visitation. *Id.*. Where visitors' interests may be affected by prison limitations on visits, courts have generally "'[struck] the balance in favor of institutional security,' and accorded great weight to the 'professional expertise of corrections officials.'" *Id.* (citations omitted).

> Prisons are dangerous and filled with law-breaking because that is where the criminals are. Even the most secure prisons are dangerous places for inmates, employees, and visitors. . . .
>
> [B]ecause of the need for prison security, visitors do not have the same right of unimpeded access to prisoners, without government scrutiny, that they would have to persons in society outside prison. . . . [T]he government's power to intrude depends on the fact that the person insists on access.

*Id.* at 630, 632.

Similarly, an inmate's family member has no constitutional right to contact visitation, including no First Amendment right of association. *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997). We find no authority to support invalidating a policy which imposes behavior requirements on children who are brought to visit incarcerated individuals. There exist many sound reasons for prison officials to institute such a policy which relate to safety and security of inmates, visitors, and employees.

## II.

Ms. Boles also asserts that the policy is invalid because it was not promulgated as a rule under the Administrative Procedures Act. If the policy is properly defined as a rule, it would indeed be subject to invalidation by the court if it was not promulgated in compliance with requirements of the Administrative Procedures Act. Tenn. Code Ann. §§ 4-5-216 and -225(c).

The UAPA defines "rule" as

---

[3] On appeal, Ms. Boles no longer alleges any constitutional violation, but maintains that she is not required to assert a violation of a constitutional right in order to have standing to bring an action for a declaratory judgment under Tenn. Code Ann. § 4-5-225(a).

each agency statement of general applicability that implements or prescribes law or policy or describes the procedures or practice requirements of any agency. "Rule" includes the amendment or repeal of a prior rule, but does not include:

(A) Statements concerning only the internal management of state government and not affecting private rights, privileges or procedures available to the public
[and]
(G) Statements concerning inmates of a correctional or detention facility.

Tenn. Code Ann. §4-5-102(10).

The Department asserts that the policy in question falls within both the statutory exemptions set out above. In *Mandela v. Campbell*, 978 S.W.2d 531 (Tenn. 1998), our Supreme Court considered a similar challenge to the Department's policies on disciplinary procedures for prisoners. In that opinion, the Court said:

> The legislature has provided the TDOC considerable deference and broad discretionary powers to enable the TDOC to manage its tremendous responsibilities. *See* Tenn. Code Ann. § 4-6-102. . . This broad grant of legislative discretion necessarily includes the power to establish policies and procedures for handling disciplinary matters. This broad grant of discretion also envisions that those persons intimately involved with the intricacies of the prison system and not the voting public are best equipped to establish policies and procedures for inmate discipline.
>
> The promulgation requirements of public notice, public hearing, attorney general approval, and filing with the state are simply not realistic requirements for implementing procedures that concern the intricacies and complexities of a prison environment.

*Id.* at 534.

The Court determined that the Department's disciplinary procedures are internal operating procedures which are not "rules" under the Administrative Procedures Act. The Court's decision was based primarily on its reading of the APA *in pari materia* with the statutes governing the authority of the Department, and finding such a reading evidenced a legislative intent "to grant considerable deference to those best suited and most familiar with the prison setting when constructing inmate disciplinary policies and procedures." *Id.* at 535.

The Supreme Court's holding in *Mandela* was limited to prisoner disciplinary procedures, and those policies are distinguishable from policies regarding visitation, at least with regard to the impact on unincarcerated persons. However, visitation policies govern prisoners also, and a

prisoner's rights to visitation can be curtailed due to certain disciplinary infractions. They are certainly "procedures that concern the intricacies and complexities of a prison environment." Visitation can and must be regulated in the interest of institutional safety and security. Therefore, we conclude that policies regulating visitation at the institution and, consequently to some extent persons who enter into the institution for purposes of visiting an inmate, are "statements concerning inmates of a correctional or detention facility" under Tenn. Code Ann. § 4-5-102(10)(G).

As the Supreme Court found, the legislature has given broad discretion to the Department to manage its facilities:

> The management and government of the state penitentiaries for adults are vested in the department of correction. It has all the power necessary for the full and efficient exercise of the executive, administrative, and fiscal supervision over all such institutions, except as otherwise expressly provided.

Tenn. Code Ann. § 4-6-102.

The legislature has also exempted the Department from the rulemaking requirements of the Administrative Procedures Act in the establishing of policies concerning inmates of the prisons under the Department's control. Therefore, we conclude that the Department's policy on the governance of the behavior of children who visit prisons are not required to be promulgated following the rulemaking requirements of the APA.

We affirm the trial court's dismissal of the petition. Costs are taxed to the Appellant, Peggy Boles.

_____
PATRICIA J. COTTRELL, JUDGE