IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2001

## ARTHUR ARMSTRONG, A/K/A HAKI AL-BEY v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 99-2630-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-02328-COA-R3-CV - Filed June 7, 2001**

---

An inmate who was found guilty of three disciplinary infractions challenged those convictions by filing a Petition for Writ of Certiorari. The trial court dismissed the Petition. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Arthur L. Armstrong, Only, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Terri L. Bernal, Assistant Attorney General, for the appellee, Department of Correction, Lt. Vance, and Warden Ricky Bell.

**OPINION**

**I.**

Arthur Armstrong, also known as Haki Al-Bey, is an inmate at the Turney Center Industrial Prison and Farm. In the course of an eight-day period in May of 1999, Mr. Armstrong was written up for three disciplinary infractions: possession of contraband, violation of Department of Corrections policies, and attempted intimidation of an officer. The contraband was a sweatshirt with the arms cut off and a hole cut out in front; the violation of policy was the wearing of a hat that was turned backwards; and the attempted intimidation occurred when the officer began to write up one of the infractions, and Mr. Armstrong stated that "the federal judge will soon stop all these simple retaliatory write-ups", which the officer took to be a threat of a lawsuit.

Mr. Armstrong was placed in disciplinary segregation on May 30, 1999. On June 8, the Institution Disciplinary Board convicted Mr. Armstrong of the three infractions. The penalty was loss of sentence reduction credit for the time spent in segregation pending the disciplinary hearings, a written reprimand, and a verbal warning. The disciplinary convictions were later upheld by Warden Ricky Bell.

Mr. Armstrong filed a Petition for Writ of Certiorari on September 16, 1999. In addition to the Department of Correction, his petition named Warden Bell and Lieutenant Vance, the Chairman of the Disciplinary Board, as respondents. The respondents filed a Motion for Dismissal or Summary Judgment, and Mr. Armstrong filed a Response in Opposition to the Motion.

On August 11, 2000 the trial court filed a Memorandum and Order, which dismissed all of Mr. Armstrong's claims. The court dismissed the claims against Warden Bell and Lieutenant Vance because the only proper respondent was the Department of Correction. *See* Tenn. Code. Ann. §§ 27-9-101 through 27-9-114; *Mandela v. Campbell*, 978 S.W.2d 531 (Tenn. 1998); *Woodrow Wilson v. South Central Correctional Facility Disciplinary Board*, No. M2000-00303-COA-R3-CV (Tenn. Ct. App. Sept. 28, 2000).[1] The claims against the Department were dismissed for failure to state a claim upon which relief can be granted. *See* Rule 12.02(6), Tenn. R. Civ. P. This appeal followed.

## II.

As the trial court correctly pointed out, the scope of review under a common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only as to whether that tribunal has exceeded its jurisdiction, or acted illegally, fraudulently or arbitrarily. *See Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App. 1981). The writ is not available as a matter of right, but is granted under unusual or extraordinary circumstances. *Clark v. Metro Government of Nashville*, 827 S.W.2d 312, 316 (Tenn. Ct. App. 1991). Its grant or denial is within the sound discretion of the trial court. *Boyce v. Williams*, 389 S.W.2d 272 (Tenn. 1965).

Mr. Armstrong claims that the discipline imposed upon him violated his free speech rights. However, the United States Supreme Court has noted that the unique requirements of prison life necessarily involve the retraction or withdrawal from inmates of many rights and privileges that are routinely afforded to ordinary citizens. *Wolff v. McDonnell*, 418 U.S. 539 (1974). Thus, even though a prisoner does not surrender all his free speech rights when the gates of the prison close behind him, an expression of opinion, stated in a belligerent manner and/or at an inappropriate time, can form the basis for a disciplinary infraction. *See Monroe Davis v. Commissioner Donal Campbell, et al.*, No. 01-A-01-9712-CH-00755 (Tenn. Ct. App. Nov. 25, 1998). Similarly, the

---

[1] We would point out that both *Mandela* and *Woodrow Wilson* dealt with prisons run by a private entity, and by statute the private entity cannot punish prisoners under its control. This case arose in a state-run institution; therefore neither *Mandela* nor *Woodrow Wilson* has any application here.

choice of what clothing to wear, or the manner of wearing it, normally a matter of taste in civil society, can be strictly regulated within prisons.

In his appellate brief, Mr. Armstrong claims that it was illegal for the Disciplinary Board to punish him for the clothing he wore because the Department has not promulgated "any TDOC regulations, policies or rules, pertaining to how an inmate can wear his personal head gear or his personal sweat shirt, during the assigned recreation time." (Emphasis by Mr. Armstrong).

Contrary to Mr. Armstrong's argument that the TDOC policies, only apply to clothing issued by the Department, we note that #504.05 (VI)(K) of its Administrative Policies and Procedures states simply that "clothing shall be worn in the manner intended (i.e. pants shall be worn above buttocks.) Failure to comply with this requirement may result in disciplinary action." It does not appear to us that the Department or the prison authorities need spell out in detail exactly how every article of clothing must be worn in order to enforce this general rule.

We also note that the record indicates that Mr. Armstrong was told to get rid of his sweatshirt several times before being written up for possession of contraband, and that he was given the opportunity to turn his hat around before being cited for that infraction. Mr. Armstrong therefore cannot be heard to complain that he received inadequate notice of the rules he was expected to follow, or that the Disciplinary Board exceeded its jurisdiction by meting out punishments for the three disciplinary infractions.

As for the question of whether the disciplinary proceedings were themselves conducted in a constitutional or lawful manner, this depends on the due process rights to which an inmate is entitled in regard to disciplinary hearings. Those rights, in turn, depend on the nature of the sanctions imposed. *See Sandin v. Conner*, 515 U.S. 472 (1995).

In the *Sandin* case, Demont Conner was serving a sentence of thirty years to life in maximum security for multiple serious crimes. He angrily resisted an officer's attempt to perform a body search, while using foul language. After a hearing on the incident, he was sent to disciplinary segregation for thirty days. Mr. Conner complained that alleged irregularities in the proceedings violated his due process rights.

The Supreme Court held that a liberty interest which entitles an inmate to limited due process can exist in the context of a disciplinary proceeding, but only when the sanctions imposed for an alleged infraction subject the inmate to a deprivation or hardship which is atypical in relation to the ordinary incidents of prison life. 515 U.S. at 486. The court found that thirty days in disciplinary segregation was well with the normal incidents that Mr. Conner might expect from a lengthy prison term, and that it did not trigger a liberty interest protected by due process guarantees.

In the present case, Mr. Armstrong served ten days in solitary confinement, with loss of sentence reduction credits for that time, received written and verbal warnings, and his sweatshirt was confiscated. We hardly think that such a punishment triggers the constitutional protections that he

is asking for, and we do not believe that the trial court abused its discretion in declining to grant him the writ of certiorari.

## III.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Arthur Armstrong, also known as Haki Al-Bey.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.