IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2001

## DAVID BRITT v. DONAL CAMPBELL, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-374-III     Ellen H. Lyle, Chancellor**

---

**No. M2000-01423-COA-R3-CV - Filed June 5, 2001**

---

A prison inmate escaped from custody and was recaptured. After a disciplinary hearing, the Department of Correction extended his Release Eligibility Date so that he would have to serve an additional 20% of his sentence before being considered for parole. The prisoner filed a Petition for Declaratory Judgment, contending that the Department's action violated statutory and constitutional law. The trial court dismissed the Petition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

David Britt, Nashville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Dawn Jordan, Assistant Attorney General, for the appellees, Donal Campbell, Ricky Bell, Tommy Vance and Tim Terry.

### OPINION

### I.

In April of 1990, David Britt pleaded guilty to first-degree murder, and was sentenced to life imprisonment as a Range I Standard Offender. His sentence accordingly carried a Release Eligibility Date (RED) which entitled him to be considered for parole after serving about thirty years of his sentence.

On January 30, 1999, Mr. Britt was housed at the South Central Correctional Center, and was classified as being on minimum security status. During the 4:00 p.m. count, correctional officers

discovered that he was not present in his assigned cell. A subsequent count confirmed that he was absent from the facility. Shortly thereafter, David Britt was arrested in Decatur County, Tennessee, outside the confines of the South Central Correctional Center.

On February 7, 1999, Mr. Britt was brought before a three-member panel of the Disciplinary Board for a hearing. The panel included Lieutenant Thomas Vance. Mr. Britt pled not guilty, but chose not to testify because he had been informed that he could be charged with escape, a Class E felony, *see* Tenn. Code. Ann. § 39-16-605, and he did not wish to incriminate himself by any testimony he gave at the disciplinary hearing.

The Disciplinary Board found Mr. Britt guilty of escape, and imposed a sentence of twenty days punitive segregation, a $5.00 fine, a recommendation for further prosecution in the criminal courts, a recommendation that he be placed in administrative segregation, and a recommendation of a 20% increase of the amount of time he would have to serve before becoming eligible for parole.[1]

Mr. Britt was transferred to the Riverbend Maximum Security Institution. On April 16, 1999, he received his quarterly TOMIS Offender Sentence Letter, and noticed that his RED, which had been November 24, 2016 before his escape, had been moved up to August 27, 2036. He filed a grievance on April 22, asking that the additional 20 years be removed from his RED date.

His grievance was heard by a five member Board on May 18, 1999. The Board advised Mr. Britt "to send a request to the Case manager to try and solve the problem." Mr. Britt appealed to Warden Ricky Bell, who concurred with the Grievance Board, and rejected the appeal. Mr. Britt claims that he then appealed to the Commissioner of Correction, but there is no evidence in the record to show that he had actually done so.

On February 7, 2000, Mr. Britt filed a Petition for Declaratory Judgment in the Chancery Court of Davidson County, naming Correction Commissioner Donal Campbell, Warden Bell, Lieutenant Vance, and Records Officer Tim Terry as respondents. He claimed that Department of Correction policy #502.02 requires a finding of actual or threatened violence in conjunction with an escape attempt before the Department can legally increase his RED date, and noted that there were no allegations of violence in the record of the disciplinary proceedings against him.

The respondents filed a Motion to Dismiss or for Summary Judgment, to which Mr. Britt responded. The trial court filed an Order and Memorandum on May 19, 2000 granting the motion. The court dismissed the individual defendants, because the only proper respondent was the Department of Correction. See Tenn. Code. Ann. § 4-5-225.

---

[1]Since the South Central Correctional Center is operated by Corrections Corporation of America (CCA), the recommendations of its Disciplinary Board must be reviewed and approved by the Commissioner's designee before disciplinary sanctions may validly be imposed. *See Mandela v. Campbell*, 978 S.W.2d 531 (Tenn. 1998). It is unclear from this record whether such an approval was obtained. However, the appellant did not raise this question at either the trial level or on appeal, so we will assume that the Commissioner's designee gave the required approval.

The court also granted summary judgment to the Department of Correction on any claims against it, holding that Policy #502.02 "does not require that actual or threatened violence be shown when the inmate is in minimum restricted or higher custody in order to impose the additional punishment of extension of release eligibility date." The court additionally found that Mr. Britt's petition was deficient because it was not accompanied by an affidavit stating the dates of his grievance, including the date of the final decision of the grievance committee, and that it was untimely, because it was not filed within 31 days of that final decision. *See* Tenn. Code. Ann. § 41-21-806. This appeal followed.

## II. POLICY #502.02

Mr. Britt's appellate brief is an angry document, filled with accusations of statutory and constitutional violations allegedly committed against him by numerous employees and officials of the Department of Correction, including some who were not even named as respondents in his petition. His arguments are full of references to the Fifth, Eighth and Fourteenth Amendments, to the Law of the Land provision of the Tennessee Constitution, and to the perjury statutes, but there is very little coherent discussion as to how any of these apply to his case.

Mr. Britt's supplemental brief focuses on the contractual aspects of his plea agreement. He argues that the RED was part of his agreed-upon sentence, and thus that any alteration to it is a violation of his constitutional rights. However, we have had many occasions to examine the constitutionality of the Department's authority to extend REDs for violations of disciplinary rules, and we have always held that such authority is constitutional so long as the RED does not have the effect of extending the sentence beyond its expiration date. *See Smith v. Campbell*, 995 S.W.2d 116 (Tenn. Ct. App. 1999); *Rowland v. Bradley*, 899 S.W.2d 614 (Tenn. Ct. App. 1994).

If we put aside the question of the timeliness of the appellant's Petition, we can make out only two arguably valid issues from his briefs: the proper interpretation of the Disciplinary Punishment Guidelines found in the Department's Policy #502.02, and the effect of Mr. Britt's exercise of his Fifth Amendment right on the Disciplinary Board's final determination.

We should note at the outset that despite Mr. Britt's protests to the contrary, it has long been established that there is no constitutional right to parole, prior to the expiration of a sentence imposed as the result of a valid conviction. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979); *Kaylor v. Bradley*, 912 S.W.2d 728 (Tenn. Ct. App. 1995); *Rowland v. Bradley*, 899 S.W.2d 614 (Tenn. Ct. App. 1994). In Tennessee, a Release Eligibility Date is the earliest date an inmate convicted of a felony is eligible for parole. Tenn. Code. Ann. § 40-35-501. That statute sets out the standards for determining REDs for different offenses and classes of offenders, and it also gives the Department of Correction the authority to extend an inmate's RED as punishment for disciplinary infractions. It reads in pertinent part:

> (k) The release eligibility date provided for in this section is the earliest date an inmate convicted of a felony is eligible for parole; such date is conditioned on the

inmate's good behavior while in prison. For a violation of any of the rules of the department of correction or institution in which the inmate is incarcerated or while on any release program other than parole, the commissioner or the commissioner's designees may defer the release eligibility date so as to increase the total amount of time an inmate must serve before becoming eligible for parole. This increase may, in the discretion of the commissioner, be in any amount of time not to exceed the full sentence originally imposed by the court, and shall be imposed pursuant to regulations promulgated by the commissioner which give notice of the length of discretionary increases that may be imposed for a violation of each of the rules of the department or institution.

. . . .

(m) Extensions in the release eligibility date provided for herein and in other sections of this chapter shall only be imposed following a hearing conducted in accordance with due process of law.

The Department of Correction has furnished us with a certified copy of #502.02 of its Administrative Policies and Procedures,[2] which reads in pertinent part:

**DISCIPLINARY PUNISHMENT GUIDELINES**
. . . .

VI.  PROCEDURES:

. . .

D.  In all cases in which an inmate is found guilty of the offense of escape from minimum restricted or higher custody or from any custody level with actual or threatened violence, in addition to any other punishment imposed, the offender's parole or release eligibility date shall be extended by adding thereto an additional twenty percent (20%) of the offender's original maximum sentence, if sentenced as a Class X felon, or under the Judge Sentencing Act or the Sentencing Reform Act of 1989, or by extending the inmate's release eligibility date to the sentence expiration date, whichever is less . . . .

. . .

G.  For purposes of (D), (E), and (F) above, a life sentence shall be considered ninety-nine (99) years.

---

[2] Since the disciplinary process took place at a CCA-operated prison, the most appropriate policy to send would have been the identically worded #9502.02

Mr. Britt contends that the language of #505.02(VI)(D) should be interpreted to mean that an inmate's release eligibility date should be extended only when escape has been accomplished through the use of actual or threatened violence. The State argues to the contrary that it means that escape from minimum, medium, or maximum custody carries that penalty whether or not violence is involved.

In order to resolve this question, we will examine the language of the policy closely and apply the assumptions, familiar from the rules of statutory construction, that the words of the policy are to be read in their natural and ordinary sense, that every word in the policy was put there for a purpose, and that to correctly construe it, the court must give every word and phrase in the policy some meaning. *See Voss v. Shelter Mutual Insurance Company*, 958 S.W.2d 342 (Tenn. Ct. App. 1997); *United Canners, Inc. v. King*, 696 S.W.2d 525, 527 (Tenn.1985).

When we examine the phrase, "[i]n all cases in which an inmate is found guilty of the offense of escape from minimum restricted or higher custody or from any custody level with actual or threatened violence . . . ." It strikes us that under the interpretation proposed by Mr. Britt, the words "from minimum restricted or higher custody" would have absolutely no meaning whatsoever.

In order to give meaning to these words, we must assume that the Department intended to establish two alternative situations that would allow it to punish escapes by extending a prisoner's RED: when he has escaped from any custody level with actual or threatened violence, or when he has escaped from minimum restricted or higher custody with or without violence. Presumably, escape from lesser degrees of custody, such as work-release, would bring a different penalty.

This interpretation not only gives meaning to every word in the policy, but it also appears to advance the Department's goals of discouraging escape from secure institutions. Since most inmates in work-release or other low custody correctional situations are close to the end of their sentences, a 20% extension in their REDs would be virtually meaningless, and other penalties would be preferable. We therefore believe that the respondent's interpretation of the policy is correct.

### III. THE FIFTH AMENDMENT

As we stated above, Mr. Britt declined to testify at his disciplinary hearing, citing his Fifth Amendment right against self-incrimination, and the possibility that he would ultimately have to face a criminal trial for escape. He contends that the Disciplinary Board should have postponed the hearing until after the trial, so he would not have to invoke the privilege, and would be able to mount an effective defense.

It should be obvious, however, that a prompt resolution of disciplinary charges is necessary if order is to be maintained in corrective institutions, and that making such a resolution of charges wait until the completion of far more lengthy judicial proceedings would frustrate that goal. The United States Supreme Court has stated that when dealing with disciplinary matters in prisons, normal due process rights are circumscribed by the necessary "mutual accommodations between

institutional needs and objectives and the provisions of the constitution that are of general application." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

For example, the Supreme Court has stated that an inmate is entitled to invoke the Fifth Amendment privilege during disciplinary proceedings, but that the finder of fact at such proceedings may draw an adverse inference from the inmate's silence, an inference that is forbidden during criminal prosecutions. *See Baxter v. Palmigiano*, 425 U.S. 308 (1976).[3]

It is unclear from the record what inferences the Disciplinary Board may have drawn from Mr. Britt's silence, but it appears to us that his disappearance from the prison and his subsequent apprehension in Decatur County speak for themselves. If Mr. Britt had chosen to testify, he would have perhaps at most been able to offer some mitigating evidence. We note, however, that he did not suggest at any stage of the proceedings the existence of any mitigating evidence he could have offered. We do not believe that Mr. Britt had demonstrated the slightest possibility that the outcome could have been different if he had chosen to testify, and we find that any arguments based on his Fifth Amendment privilege are without merit.

## IV.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, David Britt.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

---

[3] The *Baxter* court also said that if inmates are compelled to furnish incriminating evidence at a disciplinary hearing, they must be offered whatever immunity is required to supplant the privilege. 425 U.S. at 316. That is not the situation before us. Mr. Britt was entitled to testify, but he chose not to, and the Disciplinary Board chose not to compel his testimony, presumably because they didn't need it to determine his guilt.