IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 19, 2016


**JEFFERY WALTON v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.**


**Appeal from the Chancery Court for Hardeman County**
**No. 18178     Martha Brasfield, Chancellor**

_____


**No. W2015-01336-COA-R3-CV – Filed May 23, 2016**
_____


Appellant, an inmate at a state prison operated by a private contractor, filed the underlying *pro se* petition for a writ of certiorari to challenge the result of a disciplinary proceeding against him. The trial court dismissed the petition against the private contractor's employees on the ground that these employees could not impose punishment on the inmate under Tennessee Code Annotated Section 41-24-110(5) and were, thus, not proper parties to the petition. As to the Appellee Tennessee Department of Correction, the trial court dismissed the petition, finding that the board had not acted illegally, arbitrarily, or fraudulently and that the inmate had not stated a claim for violation of due process. We affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Jeffrey Walton, Whiteville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Madeline B. Brough, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Correction.

James I. Pentecost and Nathan D. Tilly, Jackson, Tennessee, for appellees, Cherry Lindamood, Trudy Powell, and Vivian Oliver.

**OPINION**

## I. Background

Appellant Jeffrey Walton is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). At all times relevant to this case, Mr. Walton was incarcerated at the Whiteville Correctional Facility ("WCF"). WCF is a private prison operated by Corrections Corporation of America ("CCA"). Cherry Lindamood, Trudy Powell, and Vivian Oliver (collectively the "CCA Respondents," and together with TDOC, "Appellees") are all employed by CCA. Ms. Lindamood is the Warden at WCF. Ms. Powell is the Disciplinary Chairperson at WCF, and Ms. Oliver is a sergeant at WCF.

The instant appeal arises from disciplinary action that was taken against Mr. Walton. On August 29, 2014, Mr. Walton and his cellmate were presented with disciplinary reports that charged the two inmates with possession and use of tobacco products. The incident report states that, while making rounds on August 29, 2014, Sergeant Oliver observed Mr. Walton and his cellmate smoking tobacco. The report further states that Sergeant Oliver entered the cell and asked for the cigarette, but Mr. Walton's cellmate flushed it down the toilet.

A disciplinary hearing was originally set for September 5, 2014, but was continued twice. The hearing was eventually held on September 16, 2014. Trudy Powell presided over the Disciplinary Board hearing, and Mr. Walton was represented by an inmate advisor. According to the Disciplinary Report Hearing Summary, Mr. Walton pled "not guilty" to the charge of possession/use of tobacco products and specifically stated that "he did not know anything about a cigarette." At the hearing, Sergeant Oliver testified that she witnessed Mr. Walton smoking a cigarette that he then handed to his cellmate, who flushed it down the toilet. The Disciplinary Board found Mr. Walton guilty and imposed punishment of a $4.00 fine, five days of segregation, and loss of visitation privileges for three months.

On September 22, 2014, Mr. Walton appealed the Disciplinary Board's decision to Ms. Lindamood, the Warden of WCF. In his appeal, Mr. Walton argued that: (1) no physical evidence was presented at the hearing; (2) the reporting officer presented contradictory statements at the due process hearing that are not part of her written report; and (3) the reporting officer violated TDOC policy 506.15 concerning disposition of contraband. Ms. Lindamood affirmed the Disciplinary Board's decision. On October 24, 2014, Mr. Walton appealed to the Commissioner of Corrections, and the Commissioner's Designee, Pat Spears, affirmed the conviction.[1]

---

[1] As explained by the Tennessee Supreme Court, in *Mandela v. Campbell*, 978 S.W.2d 531, 532-33 (Tenn.

On December 23, 2014, Mr. Walton filed a petition for common-law writ of certiorari in the Chancery Court of Hardeman County (the "trial court").[2] Mr. Walton's petition for writ of certiorari contains additional allegations of deprivation of due process. In relevant part, he avers that the Disciplinary Board's failure to record the proceeding resulted in a lack of evidence of Sergeant Oliver's "contradictive statements of testimony." Additionally, Mr. Walton maintains that the charges against him were false and were in retaliation for past incidents. He also argues that his punishment was too severe. In sum, by his petition, Mr. Walton sought review of his conviction for possession of tobacco on the following grounds: (1) the Disciplinary Board violated his due process rights under TDOC policy 502.01 by not meeting the preponderance of the evidence standard; (2) the Disciplinary Board violated

_____

1998):

> The TDOC's Uniform Disciplinary Procedures were implemented to provide a "fair and impartial tribunal [to hear] all disciplinary charges brought against inmates of the TDOC." Policy # 9502.01(IV)(A). The policy governs the manner in which disciplinary hearings shall be conducted, outlines an accused's rights, and establishes a disciplinary board. Disciplinary boards are comprised of six institutional employees, and "disciplinary hearing[s] shall be conducted before a panel of at least three (3) members" of the disciplinary board. Policy # 9502.01(VI)(A)(I).
>
> The Uniform Disciplinary Procedures mandate appointment of a liaison between the TDOC and the private contractor. This liaison is referred to as a "Commissioner's Designee." The commissioner's designee is a TDOC employee who is "authorized by the commissioner to serve as the approving authority for specified actions occurring at privately contracted TDOC facilities." Policy # 9502.01(IV)(I). A commissioner's designee shall:
>
>> observe all Class A and B disciplinary hearings, and approve or modify all recommendations of the disciplinary board at the time of the hearing. In cases of Class C infractions where punitive segregation is recommended, the commissioner's designee must approve/modify the recommendation as soon as possible and prior to the inmate's placement in segregation. If the commissioner [sic] designee is not present at a Class C hearing at which the board recommends any punishment other than a verbal warning, the chairperson shall forward all documentation to the commissioner [sic] designee for review prior to punishment.
>
> Policy # 9502.01(VI)(D)(2). Accordingly, the disciplinary board conducts hearings, reviews the evidence, and makes recommendations to the TDOC liaison, who must approve or modify the board's recommendation.

_____

[2] As discussed, *infra*, Mr. Walton's petition also named CCA as a Respondent.

TDOC policy 506.15 concerning the disposition of contraband; (3) the Commissioner's Designee committed reversible error when he stated that there was not a due process violation noted in Mr. Walton's disciplinary appeal and documentation; (4) the TDOC Commissioner committed reversible error when he stated that Mr. Walton failed to support the fact that the Commissioner's Designee reached an incorrect decision when reviewing the appeal; and (5) Appellees have knowingly and willfully fabricated disposition documents and forged the dates and signature on these documents. On February 5, 2015, TDOC filed a notice of no opposition to the petition for writ of certiorari, and the trial court granted the petition by order of February 11, 2015.

On February 9, 2015, the CCA Respondents filed a motion to dismiss pursuant to Tennessee Rules of Civil Procedure 12.02(1) and (6). Specifically, the CCA Respondents argued that: (1) Mr. Walton had failed to comply with Tennessee Code Annotated Section 27-8-106, which requires a petitioner to state, in his or her petition for writ of certiorari, that "it is the first application for the writ;" and (2) the CCA Respondents are not proper parties to the action because TDOC, not the CCA employees have the authority to take disciplinary action on an inmate under Tennessee Code Annotated Section 41-24-110(5) and TDOC Policy § 502.01. Mr. Walton opposed the CCA Respondents' motion to dismiss and specifically argued that the CCA Respondents "have read language into [the statute] that the general assembly did not place there." Mr. Walton further argued that the CCA Respondents were, in fact, proper parties because they were the individuals who actually imposed his punishment.

On June 24, 2015, the trial court entered an order of dismissal, wherein it: (1) granted the CCA Respondents' motion to dismiss on the ground that Tennessee Code Annotated Section 27-9-104 specifically "exempts CCA employees as parties to a writ of certiorari action"; (2) found that, although Mr. Walton's initial petition did not contain the required language that it was his "first application for the writ," Tenn. Code Ann. § 27-8-106, he had subsequently amended his petition to include the language, and thus TDOC's argument, in this regard, was not a proper ground for dismissal; (3) concluded that, "[w]ith regard to [Mr. Walton's] disposition of contraband and lack of physical evidence [arguments]," "any physical evidence/contraband that existed was flushed down the toilet by [Mr. Walton's] cellmate and thus was not available as evidence at the disciplinary hearing;" and (4) "[w]ith regard to [Mr. Walton's] retaliation claims, a Petition for Writ of Certiorari is not the proper vehicle for such claims." Based upon the foregoing, the trial court concluded that there was "no violation of due process rights, and no illegal, fraudulent, or arbitrary actions [on the part] of the Disciplinary Board." Accordingly, the trial court dismissed Mr. Walton's petition. Mr. Walton appeals.

## II. Issues

Mr. Walton raises the following issues for review as stated in his brief:

1. Whether this Honorable Court has subject matter jurisdiction over this case, where the judgment appealed is not a final judgment.

2. Whether the lower court erred when it dismissed Respondents Cherry Lindamood, Trudy Powell, and Vivian Oliver, and for failing to state its factual findings on the record as required by T.C.A. 27-9-111(b), (c), and (d).

3. Whether TDOC, CCA, Cherry Lindamood, Trudy Powell, and Vivian Oliver exceeded their jurisdiction and acted illegally, fraudulently, or arbitrarily in regards to the manner in which their decision against Appellant was reached, thereby resulting in a violation of Appellant's due process rights guaranteed by the Tennessee and United States Constitutions.

4. Whether the trial court erred when it found no violation of Appellant's due process rights and no illegal, fraudulent, or arbitrary actions of the CCA and TDOC Disciplinary Board officials.

## III. Standard of Review

The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals. *See Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn. 2003); *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Crim. App. 1994)). The issuance of a writ of common-law certiorari is not an adjudication of anything. *Keen v. Tenn. Dep't of Corr.*, No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008) (citing *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003)). Instead, it is "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief." *Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001).

Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently, and whether there is any material evidence to support the board's findings. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980); *Davidson v. Carr*, 659 S.W.2d 361, 363 (Tenn.

1983); ***Harding Acad. v. Metro. Gov't of Nashville & Davidson Cnty.***, 222 S.W.3d 359, 363 (Tenn. 2007); *see also* ***Stewart v. Schofield***, 368 S.W.3d 457, 463 (Tenn. 2012). These determinations are issues of law. ***Watts***, 606 S.W.2d at 277.

The Tennessee Supreme Court has held that the use of the common-law writ of certiorari is appropriate to provide judicial relief from: (1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny parties their day in court; (4) decisions that are beyond the decision-maker's authority; and (5) decisions that involve plain and palpable abuses of discretion. ***State v. Lane***, 254 S.W.3d 349, at 355 (Tenn. 2008) (quoting ***Willis***, 113 S.W.3d at 712). A common-law writ of certiorari proceeding does not empower the courts to re-determine the facts found by the entity whose decision is being reviewed. ***Tenn. Waste Movers, Inc. v. Loudon Cnty.***, 160 S.W.3d 517, 520 n. 2 (Tenn. 2005); ***Cooper v. Williamson Cnty. Bd. of Educ.***, 746 S.W.2d 176, 179 (Tenn. 1987). Accordingly, we have repeatedly cautioned that a common-law writ of certiorari does not authorize a reviewing court to evaluate the intrinsic correctness of a governmental entity's decision. *See, e.g.*, ***Willis***, 113 S.W.3d at 712; ***Stewart***, 368 S.W.3d at 465; ***Arnold v. Tenn. Bd. of Paroles***, 956 S.W.2d 478, 480 (Tenn. 1997). As previously stated by this Court:

> At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review.

***Powell v. Parole Eligibility Review Bd.***, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). "A board's determination is arbitrary and void if it is unsupported by any material evidence." ***Watts***, 606 S.W.2d at 276-77. Whether there existed material evidence to support the board's decision is a question of law, which should be determined by the reviewing court based on the evidence submitted. ***Id***. This Court must review a trial court's conclusions of matters of law *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d). Again, this Court "will not 'inquire into the intrinsic correctness of the [b]oard's decision,' but will uphold the decision if it was reached lawfully and in a constitutional manner." ***Hopkins v. Tenn. Bd. of Paroles and Prob.***, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001). Accordingly, we consider Mr. Walton's arguments within these parameters.

## IV. Analysis

We are cognizant that Mr. Walton is a prison inmate, who is proceeding *pro se* in this appeal. The courts should take into account that many *pro se* litigants have no legal training

and little familiarity with the judicial system. ***Garrard v. Tenn. Dep't of Corr.***, No. M2013-01525-COA-R3-CV, 2014 WL 1887298, at \*3 (Tenn. Ct. App. May 8, 2014) (internal citations omitted). However, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." ***Brown v. Christian Bros. Univ.***, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at \*3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). While a party who chooses to represent himself or herself is entitled to the fair and equal treatment of the courts, ***Hodges v. Tenn. Att'y Gen.***, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000), "[p]ro se litigants are not ... entitled to shift the burden of litigating their case to the courts." ***Whitaker v. Whirlpool Corp.***, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000). With this in mind, we now turn to address the specific issues Mr. Walton raises.

## A. Jurisdiction over the Appeal

Mr. Walton filed a timely notice of appeal to this Court. However, upon review of the appellate record, we determined that the trial court had not adjudicated Mr. Walton's claims against CCA so as to confer subject-matter jurisdiction on this Court under Tennessee Rule of Appellate Procedure 3. *See, e.g., **Irwin v. Tenn. Dep't. of Corr.***, 244 S.W.3d 832, 834 (Tenn. Ct. App. 2007) ("[A final judgment] must adjudicate all of the claims between the parties."). On or about February 25, 2016, we entered a show cause order, in which we specifically explained that the record contained nothing "reflecting [either] that the trial court adjudicated the claims against Corrections Corporation of America . . .," or that a copy of the trial court's June 24, 2014 order was served on CCA as required by Tennessee Rule of Civil Procedure 58. In response to our order, on March 14, 2016, Mr. Walton filed a "Motion for Default Judgment or to Clarify Record on Appeal" in the trial court. By his motion, Mr. Walton sought a default judgment against CCA or, in the alternative, for the trial court to correct the shortcomings outlined in our order. On March 17, 2016, the trial court entered a "Clarification of Order of Dismissal," which was filed as a supplement to the appellate record. Therein, the trial court explained that "[i]t was the intention of [the trial court] to dismiss the employees of CCA and also CCA," and amended its June 24, 2015 order to reflect dismissal of TDOC, CCA, and the CCA Respondents. With the entry of the March 17, 2016 clarification, it now appears that the trial court's order is final and appealable under Tennessee Rule of Appellate Procedure 3. Accordingly, this Court has jurisdiction to hear the appeal.

## B. Dismissal of CCA Respondents

Tennessee Code Annotated Section 27-9-101, *et seq*. sets out the procedural framework governing petitions for common-law writ of certiorari. ***Fentress Cnty. Beer Bd. v. Cravens***, 365 S.W.2d 260, 263 (Tenn. 1962). Tennessee Code Annotated Section 27-9-

104 provides that the petitioner for a writ of certiorari "shall name as defendants the particular board . . . and such other parties of record, if such, as were involved in the hearing before the board or commissioners, and who do not join as petitioners." However, the discipline of prisoners is a non-delegable duty of the State, and state law prohibits private prisons or their employees from having the authority to take disciplinary actions against prisoners:

> **Commissioner; nondelegable powers and duties**: No contract for correctional services shall authorize, allow or imply a delegation of the authority or responsibility of the commissioner to a prison contractor for any of the following:
>
> ***
>
> (5) Granting, denying or revoking sentence credits; placing an inmate under less restrictive custody or more restrictive custody; or **taking any disciplinary action**.

Tenn. Code Ann. § 41-24-110 (emphasis added). Accordingly, CCA employees have no power to take disciplinary actions against state prisoners and are, therefore, not proper parties to an inmate's writ of certiorari action. *See, e.g.*, **Mandela v. Campbell**, 978 S.W.2d 531, 533 (Tenn. 1998) (holding that the board's proposed punishment is simply a recommendation, and the final approval of a disciplinary action rests solely with the commissioner's designee); **Horton v. Tenn. Dep't of Corr.**, No. M1999-02798-COA-R3-CV, 2002 WL 31126656, at *6 (Tenn. Ct. App. Sept. 26, 2002) ("The employees of privately operated prisons . . . do not have the authority to discipline prisoners.").

Here, Mr. Walton argues that the Disciplinary Board exceeded its jurisdiction and acted illegally, fraudulently, or arbitrarily by allowing Trudy Powell, a CCA employee, to impose his punishment. In **Mandela**, the Tennessee Supreme Court specifically addressed the question of whether TDOC's Uniform Disciplinary Procedures violate Tennessee Code Annotated Section 41-24-110(5) by permitting private contractor employees to sit on disciplinary boards:

> In the cases now before us, a disciplinary board was comprised of private contractor employees. These private contractor employees reviewed the evidence, entered findings, and made recommendations to a TDOC liaison. The final approval of the disciplinary recommendation rested solely with the TDOC commissioner's designee. The board's recommendation as to punishment was merely a recommendation, and actual discipline was not

imposed until the TDOC representative reviewed the case and approved the board's recommendation. Accordingly, the TDOC retained the authority to punish the prisoners and, in fact, imposed the punishments in the cases now before us. Policy # 502.01 does not violate Tenn. Code Ann. § 41-24-110(5). This issue is devoid of merit.

*Mandela*, 978 S.W.2d at 533. In other words, it is permissible for the CCA employees to act as a member on a disciplinary board so long as the punishment suggested is reviewed and approved by the TDOC. *Id*. As discussed in ***Horton v. Tennessee Department of Correction***, No. M1999-02798-COA-R3-CV, 2002 WL 31126656 (Tenn. Ct. App. Sept. 26, 2002):

> It is well-settled that no CCA employee has freestanding power to take disciplinary actions against state prisoners. The discipline of prisoners is a non-delegable duty of the State. Tenn. Code Ann. § 41-24-110 (1997). Though the prison disciplinary board at South Central Correctional Center is comprised of CCA employees, those individuals only recommend punishment. Actual discipline is not imposed until a representative of the Department reviews and approves the board's recommendation. ***Mandela v. Campbell*** 978 S.W.2d 531, 533 (Tenn. 1998). As we have recently held, it follows from this arrangement that a petition for certiorari directed at one or more CCA employees over a matter of prison discipline fails to state a claim for relief. The proper party defendant in such cases is the Department, as the responsible governmental agency. ***Wilson v. South Cent. Corr. Facility Disciplinary Bd***., No. M2000-00303-COA-RM-CV, 2000 WL 1425228, at *6 (Tenn. Ct. App. Sept. 28, 2000) (No Tenn. R. App. P. 11 application filed); ***Turner v. Campbell***, 15 S.W.3d 466, 468 (Tenn. Ct. App. 1999).

*Id.* at *4; *see also* ***Turner v. Campbell***, 15 S.W.3d 466 (Tenn. Ct. App. 1999). Although, in the instant case, the Disciplinary Board was comprised of CCA employees, who made recommendations for Mr. Walton's punishment, the recommendations were ultimately reviewed and approved by the Commissioner's Designee, Pat Spears, as indicated by Ms. Spears' signature on the Disciplinary Hearing Summary Form. Accordingly, the trial court did not err in granting the CCA Respondents' motion to dismiss for failure to state a claim. Having determined that the trial court did not err in dismissing the CCA Respondents, we will address Mr. Walton's remaining issues only as they relate to the actions of the TDOC, which is the only proper party to Mr. Walton's petition.

## C. Whether the Disciplinary Board Acted Illegally, Fraudulently, or Arbitrarily

As set out above, review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently, and whether there is any material evidence to support the board's findings. *Watts*, 606 S.W.2d at 276-77. A prisoner seeking judicial review of a disciplinary proceeding has the burden to prove "that the disciplinary board failed to follow the Uniform Disciplinary Procedures and this failure substantially prejudiced the petitioner." *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 713 (Tenn. 2003). However, minor deviations do not require dismissal of the offense if the inmate received a fair hearing. *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 873 (Tenn. Ct. App. 2002) ("Tenn. Dep't Corr. Policy No. 502.01(V) itself provides that 'minor deviations' from the procedures that do not prejudice the prisoner do not require dismissal of the disciplinary offense. To trigger judicial relief, a departure from the Uniform Disciplinary Procedures must effectively deny the prisoner a fair hearing.").

Mr. Walton first argues that, when reviewing the Disciplinary Board's decision, the trial court erred by not construing the petition in the light most favorable to Mr. Walton. In the first instance, the reviewing court does not review the record in a light favorable to either party. Rather, as set out above, "[r]eview under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently, and whether there is any material evidence to support the board's findings." *Watts*, 606 S.W.2d at 276-77. Furthermore, contrary to Mr. Walton's argument, the reviewing court cannot weigh the evidence that was adduced at the disciplinary hearing, nor can the reviewing court "re-determine the facts found by the entity whose decision is being reviewed." *Tenn. Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d 517, 520 n. 2 (Tenn. 2005); *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). In other words, a common-law writ of certiorari does not authorize a reviewing court to evaluate the intrinsic correctness of a governmental entity's decision. *See, e.g.*, *Willis*, 113 S.W.3d at 712; *Stewart*, 368 S.W.3d at 465; *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997). Here, there is no evidence that the trial court weighed the evidence that was before the Disciplinary Board. Rather, it appears that the trial court merely evaluated the procedure used by the governmental entity; accordingly, we cannot conclude that the trial court applied an incorrect standard or otherwise extended its review beyond the purview of the common-law writ of certiorari.

Mr. Walton also argues that the Disciplinary Board failed to convict him by a preponderance of the evidence. Specifically, he contends that there was no physical proof, nor evidence to preponderate in favor of his guilt. TDOC Disciplinary Policy § 502.01(IV)(I) defines "preponderance of evidence" as "[t]he amount of evidence necessary for a party to prevail at the disciplinary hearing. The degree of proof which best accords with reason and

- 10 -

probability and is more probable than not." Under the TDOC Disciplinary Policy, therefore, preponderance of the evidence means some degree of evidence that supports a finding that the inmate's guilt is "more probable than not." In addition, Mr. Walton contends that the absence of the physical evidence, i.e., the cigarette, negates the Disciplinary Board's finding of guilt. We disagree. TDOC Disciplinary Policy § 502.01(VI)(L)(4)(c) affords an inmate, who pleads not guilty, "[t]o have the evidence against him/her presented first," and instructs that the "board/hearing officer shall consider all evidence which it finds to be reliable, whether or not such evidence would be admissible in a court of law." However, the TDOC policies do not specifically require physical evidence. Here, Sergeant Oliver testified that the cigarette was flushed down the toilet by Mr. Walton's cellmate. Accordingly, the cigarette was not available for the hearing. Rather, the Board relied on the sworn testimony of the reporting official. Again, the reviewing court does not re-weigh the evidence. The reporting official's testimony, however, is sufficient to satisfy the "preponderance of evidence" definition set out in the TDOC Disciplinary Policy. Accordingly, we cannot conclude that the Board acted "arbitrarily, illegally, or fraudulently" as there was material evidence to support its conclusion.

Concerning Mr. Walton's allegations of some conspiracy, on the part of the CCA Respondents to harass and retaliate against him by falsifying documents, these arguments appear to be an attempt to have this Court review the intrinsic correctness of the Board's decision, which is beyond our purview. *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001). Furthermore, as discussed above, the CCA Respondents were not proper parties to Mr. Walton's petition. For these reasons, we conclude that Mr. Walton's argument concerning any allegation of conspiracy on the part of the CCA Respondents is not within our review under the common-law writ of certiorari.

### D. Due Process

To the extent that Mr. Walton is basing his arbitrariness and illegality claim on alleged procedural due process violations, he must first allege that he has been deprived of an interest entitled to protection under the Due Process Clause of the Fourteenth Amendment. *Rowe v. Bd. of Educ.*, 938 S.W.2d 351, 354 (Tenn. 1996); *Armstrong v. Dep't of Veterans Affairs*, 959 S.W.2d 595, 597-98 (Tenn. Ct. App. 1997). Disciplinary proceedings are an ordinary part of prison life. The United States Supreme Court has held that a prisoner's due process rights are implicated only when a disciplinary action imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), that results in a "major disruption" of the prisoner's environment. *Sandin v. Conner*, 515 U.S. at 486, 115 S.Ct. at 2301.

- 11 -

Tennessee has adopted the ***Sandin v. Conner*** rationale with regard to appeals from prison disciplinary decisions. ***Henderson v. Lutche***, 938 S.W.2d 428, 430-31 (Tenn. Ct. App. 1996). Accordingly, we have previously determined that placement in maximum security, small fines, loss of good time credits, and loss of prison employment, either separately or in combination, do not impose a significant enough hardship to trigger due process concerns. ***Seals v. Bowlen***, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *6 (Tenn. Ct. App. July 26, 2001) (holding that placement in maximum security, $5 fine, ten days in punitive segregation, and loss of one month of good time credits did not violate inmate's due process rights); ***Buford v. Tenn. Dep't of Corr.***, No. M1998-00157-COA-R3-CV, 1999 WL 1015672, at *5 (Tenn. Ct. App. Nov. 10, 1999) (holding that fifteen days punitive segregation, $4 fine, and four-month package restriction did not violate inmate's due process rights); ***Blackmon v. Campbell***, No. 01A01-9807-CH-00361, 1999 WL 85518, at *2 (Tenn. Ct. App. Feb. 23, 1999) (holding that removal from a prison job did not violate inmate's due process rights).

Mr. Walton's punishment in this case included a $4.00 fine, five days of segregation, and loss of visitation privileges for three months. Based on the foregoing authority, these penalties are not atypical or significant enough to trigger due process concerns. Accordingly, Mr. Walton has failed to state a substantive due process claim upon which relief can be granted.

## V. Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Jeffrey Walton. Because Mr. Walton is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____

ARNOLD B. GOLDIN, JUDGE